IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
AUGUST 24, 2005 Session

## YELENA UTKINA KESTERSON v. THOMAS MICHAEL KESTERSON, ET AL.

**Direct Appeal from the Chancery Court for Carroll County**
**No. 03-DR-0063      Ron Harmon, Chancellor**

---

**No. W2004-02815-COA-R3-CV - Filed January 4, 2006**

---

This case involves issues arising out of the parties' divorce. The chancery court designated and divided the parties' assets and placed an equitable lien on the separate property of the husband. The chancery court did not award alimony or attorney's fees and discretionary costs to the wife. We affirm in part, vacate in part, reverse in part, and remand for further proceedings. Further, we decline to award attorney's fees and costs on appeal.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed in Part, Vacated in Part, Reversed in Part, and Remanded**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

W. Brown Hawley, II, Paris, TN, for Appellant

Larry J. Logan, McKenzie, TN, for Appellees

## OPINION

### I. FACTS & PROCEDURAL HISTORY

Helena Utkina Kesterson ("Wife" or "Appellant") and Thomas Michael Kesterson ("Husband," and collectively with Wife, the "Parties") married on February 4, 1999, in Tashkent, Uzbekistan. At the time they married, Wife was 28 years old, and Husband was 49 years old. They have no children of their marriage, but, after their marriage, Wife brought her nine year old daughter to live with Husband in Carroll County, Tennessee at Husband's pre-marital home. Husband also has a daughter, Mrs. Stormi Prather ("Prather," and collectively with Husband, the "Appellees"), by a previous marriage.

On May 6, 2003, Wife filed a complaint for divorce in the Chancery Court of Carroll County, Tennessee. Husband left the United States and remained outside the country when Wife filed her complaint for divorce. Husband did not return during the pendency of the proceedings below, but he did employ counsel to represent him during the proceedings. At the time of her marriage to Husband, Wife was a practicing physician in Uzbekistan. Upon coming to the United States, Wife did not work outside the marriage. According to Wife, she was unable to work as a physician in the United States because her foreign license was not recognized here, and she has been unable to pass numerous tests required for her to obtain her license in the United States. During their marriage, Husband paid for Wife to take a course to assist her in obtaining her license, however, Wife quit the course before completion. Wife is currently enrolled in school working toward her Physician's Assistant degree at a cost of approximately $20,000.00 per year. At the time of the divorce hearing, Wife lacked approximately twenty-one (21) months of course work to complete her degree.

At the time of the Parties' marriage, Husband owned two businesses, Minton Enterprises, Inc. ("Minton") and Tomlin Industries ("Tomlin") with his then ex-wife, Linda Kesterson, each holding a fifty percent (50%) interest in the businesses. During the Parties' marriage, Husband purchased his ex-wife's interest in Minton and Tomlin. Thereafter, Husband merged Tomlin and a newly formed corporation, Tristar Manufacturing, Inc. ("Tristar"), into a new corporation, Three Star, Inc. ("Three Star"). Further, Husband created a certificate of deposit valued at $70,000.00 in Prather's name (the "Prather Certificate of Deposit"). Husband also attempted to transfer numerous shares of stock in Minton to Prather. In addition, Husband transferred an account held with Edward Jones Investments (the "Edward Jones Account") into Wife's name, which Wife contends he then liquidated without her consent. Wife contends that Husband dissipated their marital assets prior to leaving the country.

On October 5, 2004, the chancery court issued its order granting a divorce to Wife based upon inappropriate marital conduct by Husband. The chancery court awarded Wife $121,283.00, less $5,000.00 credit for the value of the horses and all the home furnishings. The awarded amount included one-half of the mortgage payments made by Husband during the marriage, one-half of the appraised value of the "little house," one-half of the money withdrawn from the Edward Jones Account, one-half of the money refunded based upon a wire transfer, and one-half of the money transferred by Prather through wire transfers to Husband. The court also ordered that Husband and Prather to pay off the debt owed on Wife's Chevrolet pickup truck and that Husband's Chevrolet Corvette, which was titled in Prather's name, would stand as security to ensure Husband pays off the debt owed on Wife's truck. Finally, the chancery court found that the interests in Minton Enterprises, Inc. ('Minton") and Three Star, Inc. ("Three Star") were not marital property and granted an equitable/judgment lien in favor of Wife on all assets owned by husband, which included all the assets of Minton and Three Star, Inc. as well as his interest in the "little house." The chancery court also placed a judgment lien on the Chevrolet Corvette, which was still in Prather's name.

On January 10, 2005, Husband filed a motion to release the judgment lien on Three Star due to a pending sale. According to Husband, Three Star was heavily indebted and several individuals were interested in purchasing Three Star by assuming the debt of Three Star. On January 28, 2005,

the Parties entered into a consent order. In this order, Wife agreed to release the equitable/judgment lien on Three Star in return for Husband's half ownership of the "little house;" the transfer of the title of the Chevrolet pickup truck from Husband to Wife's name; the release of the lien against the Chevrolet pickup truck held by the Bank of Gleason; the payment of $3,000.00 from the Bank of Gleason to Wife; and the transfer of Husband's ownership interest in the horses owned by the Parties to Wife. Wife also agreed to subordinate her judgment lien in the Chevrolet Corvette to the Bank of Gleason's lien on it. The Parties agreed that the ownership interest in the "little house" would not be considered as part of the marital estate for any purposes, including appeal of the chancery court's decision.

On May 16, 2005, the chancery court amended its order filed October 5, 2004 with an order *nunc pro tunc* to deny Appellant's request for alimony and attorney's fees and discretionary costs incurred at trial. The order also denied any requests by either party for relief that were not specifically addressed in its original order or any subsequent judgment.

## II. ISSUES PRESENTED

Appellant has timely filed a notice of appeal and presents the following issues for review:

1. Whether the chancery court erred in its designation and division of marital and separate property;
2. Whether the chancery court erred by failing to grant Appellant alimony;
3. Whether the chancery court erred by failing to award Appellant her attorney's fees and discretionary costs; and
4. Whether Appellant is entitled to her attorney's fees and discretionary costs on appeal.

Appellees have presented the following additional issue for review:

5. Whether the chancery court erred by imposing an equitable lien on the assets of Minton, which is currently owned by Prather.

For the following reasons, we affirm in part, vacate in part, and reverse in part the decision of the chancery court, and remand this case for further proceedings consistent with this opinion. Further, we decline to award attorney's fees and costs on appeal.

## III. STANDARD OF REVIEW

"Appellate review of a division of marital property is *de novo* upon the record with a presumption of the correctness of the trial court's findings of fact." *Dellinger v. Dellinger*, 958 S.W.2d 778, 780 (Tenn. Ct. App. 1997) (citing Tenn. R. App. P. 13(d); *Hass v. Knighton*, 676 S.W.2d 554, 555 (Tenn. 1984); *Dalton v. Dalton*, 858 S.W.2d 324, 327 (Tenn. Ct. App. 1993)). "Trial courts have wide discretion in the manner in which marital property is divided, and their decisions are accorded great weight on appeal." *Id.* (citing *Wade v. Wade*, 897 S.W.2d 702, 715

(Tenn. Ct. App. 1994); *Wallace v. Wallace*, 733 S.W.2d 102, 106 (Tenn. Ct. App. 1987)). "The trial court's decision on the distribution of marital property is presumed correct unless the evidence preponderates otherwise." *Id.* (citing Tenn. R. App. P. 13(d); *Wallace*, 733 S.W.2d at 107).

Further, "[t]rial courts have broad discretion concerning the amount and duration of spousal support." *Brown v. Brown*, 913 S.W.2d 163, 169 (Tenn. Ct. App. 1994) (citing *Loyd v. Loyd*, 860 S.W.2d 409, 412 (Tenn. Ct. App. 1993); *Jones v. Jones*, 784 S.W.2d 349, 352 (Tenn. Ct. App. 1989)). As such, "[a]ppellate courts should not interfere with the trial court's decision except when there is a clear showing that the trial court, in its discretion, reached the wrong conclusion with the result that a manifest injustice will be done if the trial court's decision is allowed to stand." *Butler v. Butler*, 680 S.W.2d 467, 470 (Tenn. Ct. App. 1984) (citing *Crouch v. Crouch*, 385 S.W.2d 288, 293-94 (Tenn. Ct. App. 1964); *Raskind v. Raskind*, 325 S.W.2d 617, 622-23 (Tenn. Ct. App. 1959); 24 Am.Jur.2d *Divorce and Separation* § 625 (1983)). This Court reviews any conclusions of law by the trial court under a *de novo* standard with no presumption of correctness. *Union Carbide Co. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993).

## IV. DISCUSSION

### A. Designation & Division of Marital & Separate Property

On appeal, Appellant asserts that the chancery court erred when it designated the Edward Jones Account as marital property and the business interests of Husband, the Prather Certificate of Deposit, and the unaccounted money removed by Husband from Three Star, Inc. as separate property. We address each property in turn.

### 1. Edward Jones Account

First, Appellant contends that the Edward Jones Account was wrongly designated as marital property and should have been designated the separate property of Appellant. Originally, the Edward Jones Account was in Husband's name. In order for the Edward Jones Account to be designated as the separate property of Appellant, Husband must have made a gift inter vivos of the account to Appellant.

As this Court has recently stated,

> [t]wo elements must be present in order to find a properly executed gift inter vivos. *Arnoult v. Griffin*, 490 S.W.2d 701, 710 (Tenn. Ct. App. 1972) (citing *Dodson v. Matthews*, 117 S.W.2d 969 (Tenn. 1938)). First, the donor must have the present intent to make a gift to the donee. *Id.* Intent is determined from the totality of the circumstances. *Id.* Second, the donor must deliver the gift to the donee. *Id.* For delivery to occur, the donor must "surrender complete dominion and control of the gift" to the donee. *Pamplin v.*

-4-

> *Satterfield*, 265 S.W.2d 886, 888 (Tenn. 1954). To prove delivery,
> the donee must show "evidence free from personal interest and not
> equivocal in character that the property claimed was delivered to
> donee during the donor's life . . . ." ***Atchley v. Rimmer***, 255 S.W.
> 366, 369 (Tenn. 1923). "The testimony of the beneficiary of an inter
> vivos gift is not sufficient to establish the gift." ***Union Planters v.***
> ***Shepard***, No. W2002-01188-COA-R3-CV, 2003 Tenn. App. LEXIS
> 498, at *12 (Tenn. Ct. App. July 14, 2003) (citing *Atchley*, 255 S.W.
> at 369). Mere possession of the property at issue is not enough. ***Id.***
> The donee must prove both intent and delivery by clear and
> convincing evidence. ***Parsley v. Harlan***, 702 S.W.2d 166, 173
> (Tenn. Ct. App. 1985) (citing *Ingram v. Phillips*, 684 S.W.2d 954
> (Tenn. Ct. App. 1984)).

***In re Estate of Greene***, No. W2004-02910-COA-R3-CV, 2005 Tenn. App. LEXIS 698, at *7-8 (Tenn. Ct. App. Nov. 7, 2005).

In this case, Appellant has failed to demonstrate that Husband intended to make a gift of the Edward Jones Account and delivered the gift to Appellant. At trial, the only evidence that Appellant presented to show that a gift *inter vivos* had been made was her own testimony. This evidence alone is insufficient to demonstrate that a gift *inter vivos* had been made. However, even assuming that this evidence would be sufficient to support a gift, her testimony does not support the finding of a gift. According to Appellant, after the Parties married, Husband placed the account in Appellant's name, informing Appellant that he wanted to keep the Edward Jones Account for both of their future use in her name. This statement by Husband demonstrates that he did not intend to make a gift of the Edward Jones Account. Rather, this statement demonstrates that Husband transmutated the property from his separate property to become part of the marital estate.

"Under the doctrine of transmutation, separate property may become the property of the marital estate if there is evidence that the parties intended for it to be marital property and treated it as such." ***Whitley v. Whitley***, No. M2003-00045-COA-R3-CV, 2004 Tenn. App. LEXIS 373, at *17 (Tenn. Ct. App. 2004) (citing *Langschmidt v. Langschmidt*, 81 S.W.3d 741, 747 (Tenn. 2002)). "Treating the property in such a way creates a rebuttable presumption of a gift to the marital estate, which can be overcome by '"evidence of circumstances or communications clearly indicating an intent that the property remain separate."'" ***Id.*** (quoting 2 Homer H. Clark, The Law of Domestic Relations in the United States § 16.2 at 185 (2d ed. 1987)).

Thus, we affirm the decision of the chancery court designating the Edward Jones Account as marital property.

## 2. Husband's Business Interests

Next, Appellant contends that the chancery court erred when it did not designate the ownership interests in Minton and Three Star as marital property. Section 36-4-121(b)(2) defines "Separate Property" as:

(A)  All real and personal property owned by a spouse before marriage, including, but not limited to, assets held in individual retirement accounts (IRAs) as that term is defined in the Internal Revenue Code of 1986, as amended;
(B)  Property acquired in exchange for property acquired before the marriage;
(C)  Income from and appreciation of property owned by a spouse before marriage except when characterized as marital property under subdivision (b)(1);
(D) Property acquired by a spouse at any time by gift, bequest, devise or descent;
(E) Pain and suffering awards, victim of crime compensation awards, future medical expenses, and future lost wages; and
(F)  Property acquired by a spouse after an order of legal separation where the court has made a final disposition of property.

Tenn. Code Ann. § 36-4-121(b)(2)(A)-(F) (2005). Section 36-4-121(b)(1) defines marital property as:

1) (A) "Marital property" means all real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing and owned by either or both spouses as of the date of filing of a complaint for divorce, except in the case of fraudulent conveyance in anticipation of filing, and including any property to which a right was acquired up to the date of the final divorce hearing, and valued as of a date as near as reasonably possible to the final divorce hearing date. In the case of a complaint for legal separation, the court may make a final disposition of the marital property either at the time of entering an order of legal separation or at the time of entering a final divorce decree, if any. If the marital property is divided as part of the order of legal separation, any property acquired by a spouse thereafter is deemed separate property of that spouse. All marital property shall be valued as of a date as near as possible to the date of entry of the order finally dividing the marital property.
 (B) "Marital property" includes income from, and any increase in value during the marriage of, property determined to be separate

property in accordance with subdivision (b)(2) if each party substantially contributed to its preservation and appreciation, and the value of vested and unvested pension, vested and unvested stock option rights, retirement or other fringe benefit rights relating to employment that accrued during the period of the marriage.

(C) "Marital property" includes recovery in personal injury, workers' compensation, social security disability actions, and other similar actions for the following: wages lost during the marriage, reimbursement for medical bills incurred and paid with marital property, and property damage to marital property.

(D) As used in this subsection (b), "substantial contribution" may include, but not be limited to, the direct or indirect contribution of a spouse as homemaker, wage earner, parent or family financial manager, together with such other factors as the court having jurisdiction thereof may determine.

Tenn. Code Ann. § 36-4-121(b)(1)(A)-(D) (2005).

Applying these definitions to the evidence adduced at trial, this Court finds that the chancery court was in error when it found the ownership of the companies to be the separate property of Husband. When the Parties married, Husband owned 50% of Minton and of Tomlin. After his marriage to Appellant, Husband acquired the other 50% ownership of Minton and Tomlin from his ex-wife, and started a new company, Tristar. Subsequently, Husband merged Tomlin and Tristar into a new corporation, Three Star. Thus, Husband's 50% ownership of Minton and Tomlin acquired after marriage and the ownership of Tristar were part of the marital estate. *See* Tenn. Code Ann. § 34-6-121(b)(1)(A). Accordingly, we reverse the chancery court's decision to designate ownership of Minton and Three Star as separate property of Husband and remand.

### 3.    Prather Certificate of Deposit

Appellant also asserts that the chancery court erred when it denied her request to treat the Prather Certificate of Deposit as marital property.[1] We disagree.

"Whether the property is marital or separate property for the purposes of property division is a question of fact." **Renick v. Renick**, No. 01-A-01-9007-CV-00263, 1991 Tenn. App. LEXIS 489, at *8 (Tenn. Ct. App. June 12, 1991). Thus, we must affirm the chancery court's decision unless the evidence adduced at trial preponderates otherwise. *See* Tenn. R. App. P. 13(d).

---

[1] Although the chancery court's initial decision did not designate the Prather Certificate of Deposit as separate property, the chancery court entered an order *nunc pro tunc* that held that "[t]he requests for either party for relief not specifically address [sic] in the Court's ruling or the subsequent Judgment were considered by the Court to be denied." Thus, Appellant's request that the Prather Certificate of Deposit be treated as marital property was denied.

At trial, Appellant presented the testimony of Jerry Dale Smith, certified public accountant, ("CPA") to prove that the money used for the Prather Certificate of Deposit had to be from income derived during the marriage. CPA testified that Husband had no appreciable savings or assets when the Parties married other than the Edward Jones Account. Appellant concludes that because Husband had no income or assets when they married, the money must have been from income made during the marriage. However, Appellant admitted during trial that Husband kept money and jewelry in a safety deposit box. Any money or jewelry kept in this box would not have been part of CPA's analysis of Husband's assets and savings. Further, it was adduced at trial that Husband purchased a Chevrolet Corvette and had it placed in Prather's name. From the evidence, it appears that Husband maintained certain assets in other people's names. Thus, we cannot say that the chancery court erred when it found that the Prather Certificate of Deposit was separate property. Accordingly, we affirm the decision of the chancery court as to this issue.

### 4. Unaccounted Money Removed by Husband from Three Star, Inc.

Lastly, Appellant contends that the unaccounted money removed by Husband from Three Star, Inc. should be considered part of the marital estate. As we have stated earlier, part of the ownership of Three Star is marital property. Thus, our analysis hinges on whether Husband dissipated these funds in anticipation of divorce. If Husband has done so, a portion of this money will become part of the marital estate.[2]

As we have previously stated,

> "The burden of persuasion and the initial burden of production in showing dissipation is on the party making the allegation, and that party retains throughout the burden of persuading the court that funds have been dissipated, but after that party establishes a prima facie case that moneys have been dissipated, the burden shifts to the party who spent the money to produce evidence sufficient to show that the expenditures were appropriate."

*Wiltse v. Wiltse*, No. W2002-03132-COA-R3-CV, 2004 Tenn. App. LEXIS 546, at *19 (Tenn. Ct. App. Aug. 24, 2004) (quoting 24 Am.Jur.2d *Divorce and Separation* § 560 (1998) (citations omitted)).

The evidence at trial fails to support a finding that Husband dissipated the marital assets. At trial, Appellant argued that Husband dissipated the funds of Three Star when he took out a $150,000 loan from the Bank of Gleason, a portion of which was paid directly to Husband allegedly to pay off a note receivable. Other than the alleged re-payment of corporate debt, Appellant was unable to show how Husband used these funds. In essence, Appellant's argument is that, since she does not

---

[2] We discuss in part IV. A. 2. of this Opinion that part of the ownership of the two companies is marital property.

know how the money was spent, dissipation must have occurred. Appellant has failed to meet her burden in this case. Thus, we cannot say that chancery court erred when it found no dissipation of assets. Accordingly, we affirm the decision of the chancery court with regard to this issue.

### B.     Denial of Alimony

Appellant also contends that the chancery court erred when it declined to award alimony to Appellant. We disagree. Section 36-5-121 of the Tennessee Code provides guidance for trial courts when determining the amount of alimony a court should award a party:

> (i)  In determining whether the granting of an order for payment of support and maintenance to a party is appropriate, and in determining the nature, amount, length of term, and manner of payment, the court shall consider all relevant factors, including:
> (1)  The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;
> (2)  The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;
> (3)  The duration of the marriage;
> (4)  The age and mental condition of each party;
> (5)  The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;
> (6)  The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;
> (7)  The separate assets of each party, both real and personal, tangible and intangible;
> (8)  The provisions made with regard to the marital property, as defined in § 36-4-121;
> (9)  The standard of living of the parties established during the marriage;
> (10)  The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;
> (11)  The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and

(12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-5-121(i)(1)-(12) (2005).[3] "The two most important factors are the obligor's ability to pay and the obligee's need." *Wiltse v. Wiltse*, No. W2002-03132-COA-R3-CV, 2004 Tenn. App. LEXIS 546, at *19 (Tenn. Ct. App. Aug. 24, 2004) (citing *Lancaster v. Lancaster*, 671 S.W.2d 501, 503 (Tenn. Ct. App. 1984)). "The propriety of awarding alimony as well as the adequacy of the amount of an alimony award depends upon the unique facts of each case." *Butler v. Butler*, 680 S.W.2d 467, 470 (Tenn. Ct. App. 1984).

Applying these standards to the evidence adduced at trial, we cannot say that the chancery court abused its discretion when it did not award alimony to Appellant. Before Appellant moved to the United States, she was a practicing physician in Uzbekistan. After withdrawing from courses to become a licensed physician in the United States, Appellant enrolled in a university level program to become a physician's assistant and, at the time of trial, was less than two years away from completion of the program. At the time Appellant filed for divorce, the Parties had been married only 4 years. Appellant is 35 years old, of sound mind, and with no physical conditions which would limit her ability to earn income. The Parties had no children of the marriage. Further, the chancery court awarded Appellant a substantial amount of assets totaling over $115,000. Husband was at fault for the divorce, but that fact alone does not necessitate an award of alimony. Accordingly, we affirm the decision of the chancery court not to award alimony.

### C. Equitable Lien

On appeal, Appellees assert that the chancery court erred when it placed an equitable lien on all the assets of Minton and all the stock ownership of Minton. We agree.

Section 36-4-121(e)(2) of the Tennessee Code states "[t]he court may impose a lien upon the marital real property assigned to a party *as security for* the payment of spouse support or *payment pursuant to property division*." Tenn. Code Ann. § 36-4-121(e)(2) (2005) (emphasis added).

"[C]ourts must attempt to give effect to the legislative purpose and intent of a statute, as determined by the ordinary meaning of its text, rather than seek to alter or amend it." *Wausau Ins. Co. v. Dorsett*, 172 S.W.3d 538, 543 (Tenn. 2005) (quoting *Wilkins v. Kellogg Co.*, 48 S.W.3d 148, 152 (Tenn. 2001)). "In attempting to accomplish this goal, courts must keep in mind that the 'legislature is presumed to use each word in a statute deliberately, and that the use of each word conveys some intent and has a specific meaning and purpose.'" *Wilkins*, 48 S.W.3d at 152 (quoting *Bryant v. Genco Stamping & Mfg. Co.*, 33 S.W.3d 761, 765 (Tenn. 2000)). "'Consequently, where

---

[3] These standards were previously codified in section 36-5-101 of the Tennessee Code, which became effective on September 1, 1983. Because of this, we need not decide whether the standards can be applied retroactively to causes of action that accrued prior to July 1, 2005.

the legislature includes particular language in one section of the statute but omits it in another section of the same act, it is presumed that the legislature acted purposefully in including or excluding that particular subject.'" *Id.* (quoting *Bryant*, 33 S.W.3d at 765).

While section 36-4-121(e)(2) does not specifically state that a lien may be imposed on separate property for the payment pursuant to property division, Tenn. Code Ann § 36-4-121(e)(2), section 36-4-121(e)(1) of the Tennessee Code allows liens to be placed on the marital real property and separate real property of a spouse as security for payment of child support, Tenn. Code Ann. § 36-4-121(e)(1). Had the legislature intended for a spouse's separate property to serve as security for payment pursuant to a property division, it would have stated so, especially given that separate real property was specifically included as possible security for payment of child support. Thus, we hold that courts may not use separate property of a spouse as security for payment pursuant to a property division. Accordingly, the decision of the chancery court as to this issue is vacated.

### D. Attorney's Fees & Costs at Trial

Lastly, Appellant contends that the chancery court erred when it did not award her attorney's fees and discretionary costs incurred at trial. "The decision to award attorney's fees to a party in a divorce proceeding, and the amount thereof, are largely within the trial court's discretion and will not be disturbed upon appeal unless the evidence preponderates against such a decision." ***Houghland v. Houghland***, 844 S.W.2d 619, 623 (Tenn. Ct. App. 1992) (citing *Batson v. Batson*, 769 S.W.2d 849, 862 (Tenn. Ct. App. 1988); *Lyon v. Lyon*, 765 S.W.2d 759, 762-63 (Tenn. Ct. App. 1988)). "Because an award of attorney's fees is treated the same as an award of alimony, the trial court should consider the factors of Tenn. Code Ann. [36-5-121(i)] to determine whether such an award is appropriate." ***Wiltse***, 2004 Tenn. App. LEXIS 546, at *23-24 (citing *Koja v. Koja*, 42 S.W.3d 94, 98 (Tenn. Ct. App. 2000) (citing *Umstot v. Umstot*, 968 S.W.2d 819, 824 (Tenn. Ct. App. 1997); *Duncan v. Duncan*, 686 S.W.2d 568, 573 (Tenn. Ct. App. 1984))).

Earlier in this opinion, this Court applied the standards for determining whether to award alimony to the evidence adduced at trial and found that the chancery court's denial of alimony was proper. Likewise, we cannot say that the chancery court abused its discretion when it did not award attorney's fees and discretionary costs to Appellant. Although Appellant argues that attorney's fees and discretionary costs should be awarded because her award of assets from the divorce did not include any liquid assets, we find appellant was awarded a substantial amount of money in the divorce decree. Accordingly, we affirm the decision of the chancery court not to award attorney's fees and discretionary costs incurred at trial.

### E. Attorney's Fees & Costs on Appeal

Appellant has requested that this Court award her attorney's fees and discretionary costs that she has incurred as a result of this appeal. In this appeal, both parties have been successful. "Where both parties are partially successful on appeal, it has been held that no counsel fees should be awarded in respect to the appeal." ***Baggett v. Baggett***, 512 S.W.2d 292, 294 (Tenn. Ct. App. 1973)

(citing 27B C.J.S. *Divorce* § 325(2)c). Thus, we decline to award Appellant her attorney's fees and discretionary costs incurred on appeal.

## V.    CONCLUSION

For the reasons set forth herein, we affirm in part, vacate in part, and reverse in part the chancery court's decision. We remand for further proceedings consistent with this opinion. Further, we decline to award attorney's fees and costs on appeal. Costs of this appeal are taxed one-half to Appellant, Yelena Utinka Kesterson and her surety, and one-half to Appellees, Thomas Michael Kesterson and Stormi Prather, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE