IN THE SUPREME COURT OF TENNESSEE
AT KNOXVILLE
September 7, 2022 Session

## STATE OF TENNESSEE v. JOHNNY SUMMERS CAVIN

**Appeal by Permission from the Court of Criminal Appeals
Criminal Court for Sullivan County
No. S72963     James F. Goodwin, Jr., Judge**

_____

**No. E2020-01333-SC-R11-CD**

_____

The primary issue presented is whether a criminal restitution order is a final and appealable order under Tennessee Rule of Appellate Procedure 3 when the order directs a defendant to pay a set amount of restitution without payment terms. A trial court ordered the defendant who had pleaded guilty to burglary and theft to pay $5,500 in restitution during his probationary period. The Court of Criminal Appeals dismissed the appeal, holding that the restitution order was not a final and appealable order because it lacked payment terms. We hold that the restitution order was a final order. Tennessee's criminal restitution statute, Tennessee Code Annotated section 40-35-304, allows—but does not require—trial courts to specify payment terms. Here, the trial court's restitution order resolved all issues, was reasonable, and appropriately considered the victim's pecuniary loss and the defendant's ability to pay.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Criminal
Appeals Reversed; Judgment of the Trial Court Affirmed**

SHARON G. LEE, J., delivered the opinion of the Court, in which ROGER A. PAGE, C.J., and JEFFREY S. BIVINS and HOLLY KIRBY, JJ., joined. SARAH K. CAMPBELL, J., filed a separate opinion concurring in part and concurring in the judgment.

Andrew J. Gibbons, District Public Defender, and Mitchell A. Raines and Lesley A. Tiller, Assistant District Public Defenders, for the appellant, Johnny Summers Cavin.

Herbert H. Slatery III, Attorney General and Reporter; Andrée Sophia Blumstein, Solicitor General; Cody N. Brandon, Assistant Attorney General; Barry Staubus, District Attorney General; and Teresa Nelson, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## I.

On February 20, 2020, Jill Rich reported to police that over $1,000 worth of wood stored in her barn had been stolen. Ms. Rich's neighbor photographed a dark colored pickup truck loaded with wood on Ms. Rich's property. Police identified the driver of the truck as Johnny Summers Cavin. In July 2020, Mr. Cavin was indicted by a Sullivan County grand jury for burglary and theft of property valued more than $2,500 but less than $10,000.

Mr. Cavin pleaded guilty to the charges. The plea agreement provided for two concurrent two-and-a-half-year sentences to be served on probation.[1] As a condition of his probation, Mr. Cavin was ordered to pay restitution to Ms. Rich in an amount to be determined at a later restitution hearing. Judgments were filed reflecting Mr. Cavin's guilty pleas and his sentence. In the judgment disposing of the burglary charge, the restitution section listed Ms. Rich as the victim but did not include a restitution amount. The judgment also included payment of restitution "based upon the defendant's ability to pay" as a special condition of Mr. Cavin's probation. After an evidentiary hearing, the trial court ordered Mr. Cavin to pay restitution of $5,500 "through the Board of Probation and Parole during the defendant's supervision."

Mr. Cavin appealed.[2] The Court of Criminal Appeals dismissed the appeal, concluding that it lacked jurisdiction. *State v. Cavin*, No. E2020-01333-CCA-R3-CD, 2021 WL 5122029, at *7 (Tenn. Crim. App. Nov. 3, 2021), *perm. app. granted* (Tenn. Mar. 24, 2022). The intermediate appellate court ruled that the restitution order was not a final order because it failed to include either payment terms or a payment schedule. *Id.* at *6.

We granted review to consider whether a criminal restitution order is a final and appealable order under Tennessee Rule of Appellate Procedure 3 when the order directs a

---

[1] The plea agreement also disposed of two other pending cases against Mr. Cavin in Sullivan County that are not part of this appeal. In these two cases, Mr. Cavin received an additional one-and-a-half years of supervised probation. Thus, his total effective sentence under the plea agreement was four years of supervised probation.

[2] After Mr. Cavin filed his notice of appeal, an amended judgment was filed incorporating the restitution order. Mr. Cavin moved to set aside the order, arguing the trial court lacked jurisdiction to modify the original judgment because the amended judgment had been filed more than thirty days after the filing of the original judgment. The trial court denied the motion, noting that the first-entered judgment did not resolve all the issues and the modified judgment entered after the restitution hearing was the final judgment. Mr. Cavin then filed a supplemental notice of appeal.

- 2 -

defendant to pay a set amount of restitution but does not set payment terms; and, if the order is final, whether the trial court erred in ordering restitution.

## II.

In resolving these issues, we construe Tennessee's criminal restitution statute, Tennessee Code Annotated section 40-35-304. This involves a question of law which we review de novo with no presumption of correctness. *State v. Welch*, 595 S.W.3d 615, 621 (Tenn. 2020) (citing *State v. Dycus*, 456 S.W.3d 918, 924 (Tenn. 2015)). Our goal is "to ascertain and give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope." *State v. Howard*, 504 S.W.3d 260, 269 (Tenn. 2016) (quoting *Owens v. State*, 908 S.W.2d 923, 926 (Tenn. 1995)). If a statute is clear and unambiguous on its face, "we must apply its plain meaning in its normal and accepted use, without a forced interpretation that would extend the meaning of the language." *State v. Tolle*, 591 S.W.3d 539, 543 (Tenn. 2019) (quoting *Carter v. Bell*, 279 S.W.3d 560, 564 (Tenn. 2009)). We "must keep in mind that the 'legislature is presumed to use each word in a statute deliberately, and that the use of each word conveys some intent and has a specific meaning and purpose.'" *State v. Hawk*, 170 S.W.3d 547, 551 (Tenn. 2005) (quoting *Bryant v. Genco Stamping & Mfg. Co.*, 33 S.W.3d 761, 765 (Tenn. 2000)).

*Final Order Under Rule 3*

We must first determine whether the restitution order was a final order and thus reviewable as a matter of right. Generally, a criminal defendant has the right to appeal a final judgment. Tenn. R. App. P. 3(b). To be appealable, a judgment must be final—that is, it must "decide[] and dispose[] of the *whole* merits of the case leaving nothing for the further judgment of the court." *Richardson v. Tenn. Bd. of Dentistry*, 913 S.W.2d 446, 460 (Tenn. 1995) (quoting *Saunders v. Metro. Gov't of Nashville & Davidson Cnty.*, 383 S.W.2d 28, 31 (Tenn. 1964)); *see also Ball v. McDowell*, 288 S.W.3d 833, 836–37 (Tenn. 2009) ("A final judgment therefore is one that resolves all of the parties' claims and leaves the court with nothing to adjudicate." (citing *In re Estate of Henderson*, 121 S.W.3d 643, 645 (Tenn. 2003))); *Wilmington Sav. Fund Soc'y, FSB v. U.S. Dep't of Just.*, No. E2018-01250-COA-R3-CV, 2019 WL 6716303, at *3 (Tenn. Ct. App. Dec. 10, 2019) (quoting *Gunn v. Jefferson Cnty. Econ. Dev. Oversight Comm., Inc.*, 578 S.W.3d 462, 464–65 (Tenn. Ct. App. 2019)); *Abston v. State*, No. W2014-02513-CCA-R3-PC, 2016 WL 3007026, at *7 (Tenn. Crim. App. May 17, 2016).

Both Mr. Cavin and the State contend that the restitution order disposed of all the issues in the case and was a final order. Thus, they argue the Court of Criminal Appeals erred by dismissing the appeal. We agree.

Tennessee's restitution statute states in plain, unambiguous terms that a trial court has the discretion to order restitution in installment payments:

> *The court* shall specify at the time of the sentencing hearing the amount and time of payment or other restitution to the victim and *may permit payment or performance in installments*. The court may not establish a payment or performance schedule extending beyond the statutory maximum term of probation supervision that could have been imposed for the offense.

Tenn. Code Ann. § 40-35-304(c) (2019 & Supp. 2022) (emphases added). The General Assembly's use of the term "may" in this context rather than "shall" is significant. "May" is a permissive term and gives a trial court discretion to order installment payments. Nothing in the statute denotes a mandatory duty to set payment terms. *See Huey v. King*, 415 S.W.2d 136, 139 (Tenn. 1967); *In re Estate of Rogers*, 562 S.W.3d 409, 424 (Tenn. Ct. App. 2018) ("'May' ordinarily connotes discretion or permission; and it will not be treated as a word of command unless there is something in the context or subject matter of the act or statute under consideration to indicate that it was used in that sense." (quoting *Colella v. Whitt*, 308 S.W.2d 369, 371 (Tenn. 1957))); *Creative Kitchens & Interiors, Inc. v. Bale*, No. 03A01-9611-CH-00379, 1997 WL 527281, at *5 (Tenn. Ct. App. Aug. 26, 1997) ("The statutory language is *permissive* rather than mandatory, as is evidenced by its provision that the trial court 'may'—as opposed to 'shall'—award treble damages in appropriate circumstances." (quoting Tenn. Code Ann. § 47-18-109(a)(3) (1994))).

Bearing in mind that the "legislature is presumed to use each word in a statute deliberately," *Hawk*, 170 S.W.3d at 551 (quoting *Bryant*, 33 S.W.3d at 765), we hold a restitution order does not have to include a payment schedule or payment terms to be a final order under Rule 3 of the Tennessee Rules of Appellate Procedure. A trial court *may* order payment terms but need not do so. Here, the restitution order resolved all issues in the case and was a final order under Rule 3.

In holding that it lacked jurisdiction, the Court of Criminal Appeals likened Mr. Cavin's case to *State v. Northern*, No. E2009-01969-CCA-R3-CD, 2010 WL 2852288 (Tenn. Crim. App. July 21, 2010), and *State v. Comer*, 278 S.W.3d 758 (Tenn. Crim. App. 2008). *Cavin*, 2021 WL 5122029, at *4. In *Northern*, the trial court ordered the defendant to pay $10,500 in restitution as part of his sentence and advised him that he "could arrange a payment schedule through his probation officer." 2010 WL 2852288, at *1. The Court of

Criminal Appeals held the order was not final because the trial court deferred to the probation officer to set the payment terms. *Id.* at \*4. Likewise, in *Comer*, the Court of Criminal Appeals dismissed an appeal of a restitution order because the trial court set an amount of restitution as part of the defendant's sentence but deferred setting a time of payment until "completion of [the] Appeal Process." 278 S.W.3d at 760–61.

The Court of Criminal Appeals' reliance on *Comer* and *Northern* was misplaced. These cases are factually and legally distinguishable. *Comer* and *Northern,* unlike Mr. Cavin's case, involved payment of restitution as a part of the sentence imposed. As explained in *State v. Gevedon*, No. M2020-00359-SC-R11-CD, \_\_\_ S.W.3d \_\_\_\_, 2023 WL _____ (Tenn. _____, 2023), there is a different statutory requirement when restitution is ordered as a condition of probation, as in Mr. Cavin's case, and when restitution is ordered as part of sentencing, as in *Comer* and *Northern*. *See* Tenn. Code Ann. § 40-35-304(g) (2019 & Supp. 2022). *Comer* and *Northern* failed to consider the effect of subsection (g) on the issue of finality, instead placing outsized significance on the inclusion of payment terms. *Northern*, 2010 WL 2852288, at \*4 ("Given the requirement of the inclusion of payment terms, the trial court's deferral to the probation officer to finalize the terms with the defendant was problematic."); *Comer*, 278 S.W.3d at 761 ("[T]he absence of a restitution payment methodology would likely preclude us from reviewing the case had we the jurisdiction to do so."). As such, these cases are not on point.

Mr. Cavin and the State agree that the restitution order was final. Neither party argues that we should abandon our well-established law on finality of orders. Neither party argues for the application of a federal standard that would require us to determine whether the trial court thought it was finished with the case, as proposed by the concurring opinion.[3] *See State v. Bristol*, 654 S.W.3d 917, 924 (Tenn. 2022) ("In our adversarial system, the judicial role is not 'to research or construct a litigant's case or arguments for him or her,' but rather to serve as 'arbiters of legal questions presented and argued by the parties before them[.]' . . . Limiting review to the issues presented by the parties promotes fairness by ensuring that litigants have a meaningful opportunity to participate in the adjudicative process." (internal citations omitted) (first quoting *Sneed v. Bd. of Pro. Resp.*, 301 S.W.3d 603, 615 (Tenn. 2010); then quoting *Carducci v. Regan*, 714 F.2d 171, 177 (D.C. Cir. 1983))).

---

[3] *See, e.g., United States v. F. & M. Schaefer Brewing Co.*, 356 U.S. 227, 232–33 (1958); *Kaye v. City of Milwaukee*, 258 F. App'x 17, 18 (7th Cir. 2007); *Wachovia Bank, N.A. v. Foster Bancshares, Inc.*, 457 F.3d 619, 621 (7th Cir. 2006); *Chase Manhattan Mortg. Corp. v. Moore*, 446 F.3d 725, 726–27 (7th Cir. 2006).

In sum, we hold the restitution order here resolved all issues and was a final order under Rule 3 of the Tennessee Rules of Appellate Procedure. The Court of Criminal Appeals erred by dismissing the appeal.

*Review of the Restitution Order*

Having determined that the Court of Criminal Appeals erred by dismissing Mr. Cavin's appeal for lack of jurisdiction, we find that the record is sufficient to allow us to review the trial court's restitution order. Thus, to avoid "a needless expenditure of scarce judicial resources," we proceed to address the merits of the case. *State v. Bobadilla*, 181 S.W.3d 641, 644 (Tenn. 2005); *see also* Tenn. R. App. P. 13(b).

Restitution involves compensation to a victim of crime and is often ordered as a condition of probation or as an alternative to incarceration. Tenn. Code Ann. §§ 40-35-104(c)(2), -304(a) (2019 & Supp. 2022). But the purpose of restitution is not limited to victim compensation; it also aims to punish and rehabilitate offenders. *Id.* § -102(3); *Comer*, 278 S.W.3d at 760 (quoting *State v. Johnson*, 968 S.W.2d 883, 885 (Tenn. Crim. App. 1997)). For some crimes, restitution is required. *See, e.g.*, Tenn. Code Ann. §§ 39-13-308(b) (2018 & Supp. 2022) (human trafficking), 40-20-116 (2018) (property offenses), 55-10-403(d) (2020) (driving under the influence resulting in physical injury or personal loss). Because Mr. Cavin was convicted of theft, the trial court was statutorily required to impose restitution.[4]

We review challenges to alternative sentences, such as restitution, under an abuse of discretion standard with a presumption that the trial court acted reasonably. *State v. Caudle*, 388 S.W.3d 273, 278–79 (Tenn. 2012); *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012); *see also State v. Bohanon*, No. M2012-02366-CCA-R3-CD, 2013 WL 5777254, at *5 (Tenn. Crim. App. Oct. 25, 2013). "A trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party." *State v. Phelps*, 329 S.W.3d 436, 443 (Tenn. 2010) (citing *State v. Jordan*, 325 S.W.3d 1, 38–40 (Tenn. 2010)).

---

[4] "Whenever a felon is convicted of stealing or feloniously taking or receiving property, . . . the court shall, thereupon, order the restitution of the property, and, in case this cannot be done, that the party aggrieved recover the value assessed against the prisoner. . . ." Tenn. Code Ann. § 40-20-116(a) (2018).

Tennessee law prescribes the procedure for ordering criminal restitution.[5] If the trial court determines restitution to be appropriate, or if a victim or the district attorney general requests restitution to be ordered, the trial court must direct the case's presentence service officer to include documentation "regarding the nature and amount of the victim's pecuniary loss" in the presentence report. Tenn. Code Ann. § 40-35-304(b). A victim's "pecuniary loss" is limited to special damages "as substantiated by evidence in the record or as agreed to by the defendant."[6] *Id.* § -304(e)(1); *see also State v. Irick*, 861 S.W.2d 375, 376–77 (Tenn. Crim. App. 1993) ("[B]asing the amount of restitution upon a civil judgment is palpable error because personal injury judgments ordinarily include general damages, and general damages are specifically excluded from restitution by T.C.A. § 40-35-304(e)."); *Damages*, Black's Law Dictionary (11th ed. 2019) (defining "special damages" as "specifically claimed and proved" damages "that are alleged to have been sustained in the circumstances of a particular wrong"). The State bears the burden of proving the victim's pecuniary loss. *State v. Bottoms*, 87 S.W.3d 95, 108 (Tenn. Crim. App. 2001) ("A victim seeking restitution must present sufficient evidence so the trial court can make a reasonable determination as to the amount of the victim's loss."); *cf. State v. Jewell*, No. M2015-02141-CCA-R3-CD, 2017 WL 65242, at *8 (Tenn. Crim. App. Jan. 6, 2017) ("While a victim's testimony alone may be sufficient to establish special damages for purposes of restitution, general statements regarding the amount of loss without explanation as to how the value was determined are insufficient." (quoting *Bohanon*, 2013 WL 5777254, at *7)).

Once the victim's pecuniary loss is determined, trial courts have to consider the defendant's financial resources and ability to pay.[7] Tenn. Code Ann. § 40-35-304(d) (2019). Finally, after considering the victim's pecuniary loss with the defendant's ability to pay, the trial court has to specify the amount of restitution and the time of payment. *Id.* § -304(c). While there is no set formula regarding the appropriate amount of restitution, "the sum must be reasonable." *State v. Mathes*, 114 S.W.3d 915, 919 (Tenn. 2003) (quoting *State v. Smith*, 898 S.W.2d 742, 747 (Tenn. Crim. App. 1994)); *Johnson*, 968 S.W.2d at 886 ("In determining restitution, the trial court must consider what the defendant can

---

[5] Section 40-35-304(a)–(f) applies to restitution ordered as a condition of probation. Subsection (g) addresses restitution ordered as part of a criminal sentence by adopting subsections (a)–(f) with certain changes. *See* Tenn. Code Ann. § 40-35-304(g).

[6] A victim's reasonable out-of-pocket expenses incurred during her cooperation with investigation and prosecution of the crime are also considered as pecuniary loss. *Id.* § -304(e)(2).

[7] As of January 1, 2022, consideration of the defendant's financial resources and ability to pay is permissive rather than mandatory. Tenn. Code Ann. § 40-35-304(d) (2019 & Supp. 2022). However, a defendant's financial resources and ability to pay remain relevant factors in setting restitution and must be considered in restitution orders for offenses committed before 2022.

reasonably pay given the appellant's means and future ability to pay." (citing Tenn. Code Ann. §§ 40-35-303(d)(10), -304(d) (1990); *Smith*, 898 S.W.2d 742)). However, unlike civil damages, the restitution amount "does not have to equal or mirror the victim's precise pecuniary loss." *Mathes*, 114 S.W.3d at 919 (quoting *Smith*, 898 S.W.2d at 747). *But cf. Bottoms*, 87 S.W.3d at 108 ("[T]he strict rules of damages are somewhat relaxed when determining the propriety and calculating the amount of restitution, [but] the rules are not completely discarded. . . . [I]f the burden of proof that is required in cases of restitution is allowed to drop far below that required in the civil courts of this State, then our criminal courts will become a haven for 'victims' who think their losses might not meet the level of proof necessary to recover in a civil case." (quoting *State v. McKinney*, No. 03C01-9309-CR-00307, 1994 WL 592042, at *3–4 (Tenn. Crim. App. Oct. 26, 1994))). Trial courts may, but are not required to, set a payment schedule so the defendant can pay in installments. Tenn. Code Ann. § 40-35-304(c). The length of time allowed for payment cannot extend beyond the maximum length of probation that could have been imposed. *Id.*; *see also id.* § -304(g)(2) (providing that, for defendants ordered to pay restitution as part of a sentence, any payment schedule may not extend beyond the length of the sentence); *Comer*, 278 S.W.3d at 761–62. Any amount of restitution that remains unpaid when the payment period expires may be converted into a civil judgment by the victim. Tenn. Code Ann. § 40-35-304(h) (describing the procedure for conversion). However, a trial court must enter a restitution order that can reasonably be paid by the defendant while under the trial court's jurisdiction, regardless of the possibility of later conversion to a civil judgment. *Bohanon*, 2013 WL 5777254, at *6 (citing *Smith*, 898 S.W.2d at 747).

Here, the trial court conducted an evidentiary hearing on restitution. Ms. Rich testified about the value of the wood stolen from her barn. The wood was reclaimed from a hand-hewn wooden barn built in the late 1800's that was used by Ms. Rich's family for many years. Around 2005, Ms. Rich decided to tear down the wooden barn and store the wood in a metal tobacco barn on her property for future use by her family. She estimated the size of the metal barn to be "easily [forty by] 100, 120 feet." Ms. Rich began using the wood for various woodworking projects, including the construction of her house, which utilized thirteen different types of wood from the barn. She estimated that "a thousand [to] 1,500 pieces" of wood worth "easily over $10,000" had been stolen from the barn. Ms. Rich conceded she first told police the stolen wood was worth over $1,000 but went to a "wood place" after the theft to determine the value of the wood. Ms. Rich noted that, while there was initially at least a thousand wood pieces in the barn, she believed the quantity dwindled to 700 or 800 pieces by February 18th or 19th, with almost all of the wood missing after Mr. Cavin's theft on February 20th.

Mr. Cavin testified about his ability to pay restitution and the value of the wood. He explained that when he was not in custody, he earned between $9.50 and $10 an hour doing

- 8 -

construction work for thirty to forty hours per week, depending on the weather. Thus, Mr. Cavin made about $400 most weeks before taxes. He testified his expenses totaled around $605 to $620 per month.[8] Mr. Cavin admitted the wood shown in the photograph taken of his truck by Ms. Rich's neighbor reflected what he had stolen. He explained that after the theft, he sold the wood to Atlantic Reclaimed Lumber for $230, and Atlantic generally gives sellers about one-third of the wood's value. Based on this, Mr. Cavin estimated the stolen wood was worth about $800 to $900.

The trial court found inconsistencies in the testimony of both Ms. Rich and Mr. Cavin. The trial court noted Ms. Rich's differing statements regarding the number of wood pieces in the barn, the inability of the wooden barn to produce a thousand beams of wood, and the unlikelihood that Ms. Rich inventoried the lumber in the days before the theft. The trial court also indicated that there appeared to be more wood in the back of the pickup truck than listed on the tally sheet from Mr. Cavin's sale to Atlantic, leaving his credibility "not good at all." The trial court ordered restitution of $5,500 based on the lumber's value and Mr. Cavin's ability to pay.

Mr. Cavin argues that the trial court should have set restitution at a lower amount. He contends the trial court failed to substantiate Ms. Rich's pecuniary loss. She testified as to the type and amount of wood in the barn at the time of the theft, and, although she had previously estimated it to be worth about $1,000, she revised that estimate upwards to over $10,000 after consulting with a hardwood retailer. Mr. Cavin argues that the $10,000 figure is an arbitrary estimation of the wood's value because Ms. Rich did not provide further details regarding the estimate or how the retailer reached it. While true that "general statements as to loss without explanation as to value are insufficient" to determine pecuniary value, "a victim's testimony alone may be sufficient to establish special damages." *Bohanon*, 2013 WL 5777254, at *7 (citing *State v. Blevins*, No. E2006-00830-CCA-R3-CD, 2007 WL 1153122, at *8 (Tenn. Crim. App. Apr. 19, 2007)).

In *Bohanon*, the victim testified that a toolbox stolen by the defendant was worth $50,000, despite only being able to describe the tools inside the box to be "expensive" and "[e]verything that a mechanic would need . . . to perform any maintenance on any vehicle." *Id.* (alteration in original) ("The trial court noted in its findings that 'the tools inside the box . . . were unspecified.'"). The Court of Criminal Appeals found these statements too general to allow "the trial court . . . to make a reasonable, reliable determination regarding

---

[8] Mr. Cavin also testified that he has three children, two of whom are minors, living with him when he is out of jail, and the amount he spends on taking care of them "varies, just depending on what their needs are."

the amount of the pecuniary loss."[9] *Id.* However, Ms. Rich's statements do not reach the same level of generality as those in *Bohanon*. Ms. Rich initially believed the lumber to be worth $1,000 based on her inexperience but later consulted with a hardwood merchant to reach her $10,000 estimate. Her final estimate, coupled with proof of the type and amount of wood stolen from the barn, was sufficient to allow the trial court to "determine the loss with reliability." *State v. Thomas*, No. E2020-00044-CCA-R3-CD, 2021 WL 246184, at *8 (Tenn. Crim. App. Jan. 26, 2021).

The trial court did not accept Ms. Rich's estimation of the wood's value as conclusive proof of pecuniary loss, noting several issues with her testimony that affected her estimate. Ms. Rich initially testified that there were 1,000 to 1,500 pieces of wood in the barn. However, on redirect examination, she revised that number downward to between 700 and 800, accounting for her belief that others had been stealing wood from the barn for over a year before Mr. Cavin's theft. The trial court also observed that Ms. Rich's wooden barn was unlikely to have produced 1,000 beams of the same dimensions and quality as the red oak beam that Mr. Cavin had previously tried to sell on Facebook for $80. Finally, despite having been at the barn two days before the theft, Ms. Rich likely had not taken an inventory of the wood, leaving her original estimate speculative at best. These considerations factored into the trial court's valuation of the lumber, which expressly considered Ms. Rich's testimony that some wood had been taken before Mr. Cavin's theft.

Mr. Cavin suggests that the trial court should have based its determination of the lumber's value on the tally sheet that he received from Atlantic on the day of the theft. He argues that, according to the tally sheet and his testimony that Atlantic generally buys wood for one-third of its value, the wood should be valued at around $800 to $900. But the trial court observed that there was more wood in the photograph of Mr. Cavin's pickup truck than appeared on the tally sheet from Atlantic, leaving Mr. Cavin's credibility "not good

---

[9] *See also, e.g.*, *State v. Thomas*, No. E2020-00044-CCA-R3-CD, 2021 WL 246184, at *8 (Tenn. Crim. App. Jan. 26, 2021) ("[W]hile the value of property can be established through the victim's testimony alone, [the victim] admitted that he had not seen the trailer in three years and had no idea what condition it was in at the time it was burned. Therefore, [the victim's] estimates could not have been based upon the value of the trailer *at the time of the offense*."); *Jewell*, 2017 WL 65242, at *9 (finding insufficient proof of pecuniary loss where employees of the victim company testified from memory about fraudulent charges and overpayments, valued the loss in rounded number increments, and gave itemized loss estimates that did not add up to the total loss alleged); *State v. Moffitt*, No. W2014-02388-CCA-R3-CD, 2016 WL 369379, at *6 (Tenn. Crim. App. Jan. 29, 2016) (finding sufficient proof of lost wages where the assault victim testified that he was supposed to be paid $2,700 for the job he was working on the day of the assault, even though no documentation was introduced to support the claim); *Bottoms*, 87 S.W.3d at 99, 108–09 (finding a victim's pecuniary loss to be unsubstantiated where, despite providing a "relatively accurate" repair estimate of $28,000, the victim introduced only one invoice showing that he had actually incurred $3,448 in repairs).

at all."[10] It was reasonable to conclude that, although Ms. Rich's testimony had its own inconsistencies, her valuation was more credible and substantiated by the factual record. Thus, the trial court properly determined the pecuniary value of Ms. Rich's loss by considering her testimony regarding the lumber's value, as well as the number of pieces and types of the stolen wood.

But deciding the pecuniary value of the wood was not the end of the trial court's obligations. The trial court also had to consider Mr. Cavin's financial resources and his ability to pay restitution. Tenn. Code Ann. § 40-35-304(d) (2019). Mr. Cavin testified he worked between thirty and forty hours a week, making $9.50 to $10 per hour. He stated that his monthly expenses totaled around $605 to $620 per month, along with variable expenses for taking care of his children. At the end of the hearing, the trial court set the restitution amount "[b]ased on Mr. Cavin's ability to pay" and his testimony that "he can work when he's . . . not in jail, and that he does work."

Mr. Cavin argues that the trial court erred in not "showing its work" by making specific findings of fact regarding his financial resources, instead only noting its "consideration of the defendant's ability to pay" in the restitution order. But we decline to require trial courts to make individual determinations of findings of fact regarding the defendant's ability to pay restitution. Tennessee's restitution statute requires the trial court to "consider" the defendant's financial resources "[i]n determining the amount and method of payment or other restitution." *Id.* § -304(d). The trial court had sufficient information from Mr. Cavin's testimony and his affidavit of indigency and considered his ability to pay as required before ordering restitution.[11]

Finally, Mr. Cavin contends $5,500 was not a reasonable restitution amount considering Ms. Rich's pecuniary loss and his ability to pay. *See Mathes*, 114 S.W.3d at 919 (stating the trial court has the authority to require appropriate restitution to the victim, but the "amount of restitution must be determined by considering the offender's financial

---

[10] This argument is also contrary to the disposition of Mr. Cavin's case. He pleaded guilty to one count of theft of property over $2,500 but less than $10,000; in doing so, he admitted that he had stolen property worth at least $2,500. *Cf. Frazier v. State*, 495 S.W.3d 246, 250 (Tenn. 2016) ("[A]t a typical guilty plea submission hearing, the defendant admits to having committed one or more particular criminal offenses."). A restitution amount less than that figure would not sufficiently compensate the victim and thus would fail to accomplish one of restitution's main goals. *See* Tenn. Code Ann. § 40-35-304(e) (defining "pecuniary loss" as including all special damages "as agreed to by the defendant"); *State v. Culbreath*, No. M2007-01157-CCA-R3-CD, 2008 WL 2796467, at *2 (Tenn. Crim. App. July 21, 2008).

[11] The trial court noted in its ruling that "[t]he law is well established that [it had] to consider among all the other factors the Defendant's ability to pay." This statement shows that the trial court set restitution with express awareness of the requirement to consider Mr. Cavin's finances.

resources and future ability to pay"). Trial courts have discretion to set restitution based on the victim's pecuniary loss and the defendant's financial resources and ability to pay while under the trial court's jurisdiction. *See, e.g.*, *State v. Lowe*, No. M2020-01480-CCA-R3-CD, 2022 WL 802619, at *4, *6 (Tenn. Crim. App. Mar. 17, 2022) (holding restitution of $52,000, payable in monthly installments of $723 over a six-year probationary period, to be reasonable where defendant could make $3,500 to $4,000 every two weeks as a welder); *State v. Woods*, No. M2017-01760-CCA-R3-CD, 2018 WL 3689491, at *4 (Tenn. Crim. App. Aug. 2, 2018) (holding the trial court did not abuse its discretion by ordering defendant to pay $540 per month for three years where he had a monthly income of approximately $1,013 after expenses); *State v. Ballew*, No. M2016-00051-CCA-R3-CD, 2017 WL 1103034, at *3 (Tenn. Crim. App. Mar. 24, 2017) ("We conclude that the $50 per month ordered by the trial court was reasonable but that the defendant, a fifty-two-year-old man with a seventh grade education and an employment history consisting only of manual labor, could not reasonably be expected to pay restitution of $36,473, regardless of the length of his probationary term."); *State v. Poland*, No. E2014-02521-CCA-R3-CD, 2015 WL 5785762, at *3 (Tenn. Crim. App. Oct. 5, 2015) (modifying a restitution order to require monthly payments of $195 when the defendant testified her income was $64 per month after expenses); *Bohanon*, 2013 WL 5777254, at *8 (holding the trial court's order unreasonable where it ordered total restitution of $16,575 and set a payment schedule of $200 per month for three years without considering the defendant's ability to pay); *State v. Truette*, No. M2005-00927-CCA-R3-CD, 2006 WL 2000540, at *2–4 (Tenn. Crim. App. July 19, 2006) (holding a restitution order requiring monthly payments of $500 to be reasonable where the defendant was expected to make $250 per week and noting that "[i]f the monthly payment amount appears to be excessive based upon the anticipated income of the defendant, the trial court is in a better position to determine whether relief is warranted at some future date").

According to Mr. Cavin, his annual gross wages total between $14,820 and $20,800, depending on his hourly pay rate and the number of hours worked. After paying his expenses and before taxes, Mr. Cavin's annual net pay is at least $7,380 and no more than $13,540, excluding other expenses, such as childcare, food, and transportation. Thus, over Mr. Cavin's probationary period, he should earn approximately $18,450 to $33,850 after expenses. We find the trial court did not err in setting the amount of restitution.

The trial court here applied the correct legal standards, reached a logical conclusion, and based its decision on a correct assessment of the proof. The amount of restitution ordered was reasonable, considering Mr. Cavin's expenses and earnings and Ms. Rich's

losses.[12] The amount was not set unreasonably high in reliance on a later conversion to a civil judgment. *See Ballew*, 2017 WL 1103034, at *3. Nor was Mr. Cavin ordered to make monthly payments that would not fulfill the restitution amount during his sentence. *See Bohanon*, 2013 WL 5777254, at *8. Given Mr. Cavin's annual earnings, the restitution amount could reasonably be paid during his sentence. *See Johnson*, 968 S.W.2d at 886. Thus, the trial court did not err by ordering Mr. Cavin to pay $5,500 in restitution over his two-and-a-half-year probationary period.

## CONCLUSION

We hold that a criminal restitution order is a final and appealable order under Tennessee Rule of Appellate Procedure 3 when it directs a defendant to pay a set amount of restitution without payment terms. Here, the trial court's restitution order was a final judgment. Further, the order was reasonable, properly substantiating Ms. Rich's pecuniary loss and considering Mr. Cavin's financial resources and ability to pay. We reverse the judgment of the Court of Criminal Appeals and affirm the judgment of the trial court. Because Mr. Cavin is indigent, the costs of this appeal are taxed to the State of Tennessee.

_____
SHARON G. LEE, JUSTICE

---

[12] Mr. Cavin asserts that after paying rent and utilities, he would only have "anywhere from $520 to $980 per month for food, clothing, transportation, taxes, and other miscellaneous expenses for him and his three children" and that requiring him to pay approximately $183 per month in restitution is unreasonable. Yet, the trial court did not require Mr. Cavin to make monthly payments, although it was within its discretion to do so. *See* Tenn. Code Ann. § 40-35-304(c) (2019 & Supp. 2022). The trial court simply required him to pay the full restitution amount by the end of his probationary period.