# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
### October 4, 2000 Session

## BERNARD BRUCE BRYANT  v.  GENCO STAMPING & MFG. CO., INC., ET AL.

**Appeal by Permission from the**
**Supreme Court Special Workers' Compensation Appeals Panel**
**Circuit Court for Putnam County**
**No. 97N0091     Hon. John A. Turnbull, Judge**

---

**No. M1999-01762-SC-WCM-CV - Filed December 11, 2000**

---

The sole issue in this case is whether Tennessee Code Annotated section 50-6-208(a) applies to a pre-existing permanent mental disability. The employee suffered a work-related shoulder injury, treatment for which resulted in aggravation of a pre-existing mental disorder.  The trial court concluded that the previous mental disability is included within the purview of Tennessee Code Annotated section 50-6-208(a).  The court thereby found both the employer and the Second Injury Fund liable for disability benefits.  On appeal, the Special Workers' Compensation Appeals Panel reversed the trial court's apportionment of liability to the Second Injury Fund, holding that section -208(a) does not contemplate pre-existing mental disorders.  We affirm the judgment of the Special Appeals Panel and find the employer liable for the full amount of benefits due the employee.

### Tenn. Code Ann. § 50-6-225(e); Findings of Fact and Conclusions of Law of the Workers' Compensation Special Appeals Panel Affirmed

WILLIAM M. BARKER, J., delivered the opinion of the court, in which E. RILEY ANDERSON, C.J., FRANK F. DROWOTA, III, and JANICE M. HOLDER, JJ., joined.  ADOLPHO A. BIRCH, JR., J., not participating.

Randolph A. Veazey and Connie Jones, Nashville, Tennessee, for the appellant, Genco Stamping & Mfg. Co., Inc.

Ronald Thurman, Cookeville, Tennessee, for the appellee, Bernard Bruce Bryant.

Paul G. Summers, Attorney General & Reporter; Dianne Stamey Dycus, Deputy Attorney General, Nashville, Tennessee, for the appellee, Dina Tobin, Director, Workers' Compensation Second Injury Fund.

**OPINION**

The appellee, Bernard Bruce Bryant, forty-six years of age at the time of the trial, lost sight in his right eye at the age of thirteen when his eyeglasses shattered, embedding glass in the eye. Nevertheless, he graduated from high school and continued his education at a vocational school, receiving training in the tool and die trade and earning his certification as a machinist.

In 1978, the appellee started experiencing psychological problems, specifically panic disorder, agoraphobia (fear of crowds), and major depressive disorder. He sought treatment from Dr. Robert C. Jamieson in Nashville, who has remained Mr. Bryant's primary treating psychiatrist. Over the years, Dr. Jamieson has prescribed a variety of medications and other treatments to stabilize Mr. Bryant's condition.

Due to his mental impairment, the appellee's work history has been sporadic at best. Before his first panic attack, he worked steadily as a butcher in his father's grocery business. However, once his psychological problems began, he could work for only short periods of time at any one job before his depression and panic attacks would force him to resign. Moreover, for eight years during the period between 1980 and 1990, the appellee's psychological problems rendered him totally disabled and unable to work. During that time, he received Social Security disability income.

On July 20, 1995, the appellee was hired by a temporary agency and placed at Genco to work as a punch press operator. His temporary position became permanent when Genco hired him as an employee on October 16, 1995. The facts are undisputed that at the time the appellee was hired in October, Genco was aware of his pre-existing blindness in his right eye and his pre-existing psychological illnesses.

In January 1996, Mr. Bryant fell at home and injured his right shoulder. Although X-rays were taken of his injury, he continued to work at Genco with no significant problems. But on February 16, 1996, while at work, he tripped over a table in the press room, landing on his right elbow and jarring his previously-injured shoulder. He reported his injury to his supervisor, who sent him to Dr. Tony Hudson for evaluation and treatment. In July, Dr. Hudson referred the appellee to Dr. J. Wills Oglesby, an orthopedic surgeon. Dr. Oglesby diagnosed the appellee as having degenerative changes in the AC (acromioclavicular) joint and possible damage to the superior labrum,[1] and recommended surgery on his shoulder. Mr. Bryant continued to work at Genco until his surgery was performed on August 16, 1996.

As he was being prepared for surgery, the appellee had an adverse reaction as his shoulder was being anesthetized. He described this experience as the sensation of his heart and lungs "shutting down," causing him to suffer a severe panic attack. After the surgery, Mr. Bryant

---

[1] The term "labrum" is defined as "a lip-shaped structure," for example, around the margin of the concave portion of some joints. See Stedman's Medical Dictionary 927 (26th ed. 1995).

experienced a recurrence of panic attacks at a greater frequency, which exacerbated his depression. He did not return to work at Genco after the surgery and eventually resigned in October 1996.

At trial, Mr. Bryant testified that since the surgery, he has been unable to work due to his aggravated emotional problems and the pain and restricted movement in his right arm and shoulder. He also testified that he suffers from drowsiness and loss of balance as a result of his medication. Vocational expert Dr. Julian Nadolsky testified that in his expert opinion, Mr. Bryant's shoulder injury precludes him from returning to the type of work he had performed at Genco. Dr. Nadolsky also testified that Mr. Bryant has no transferable job skills because his experience and training are applicable only to jobs requiring medium to heavy lifting and frequent use of his right arm or shoulder. Dr. Nadolsky concluded that as a result of the appellee's physical limitations and his mental impairment, "there are no jobs that Mr. Bryant will be able to perform."

The trial court found that Mr. Bryant's pre-existing mental condition "manifested itself in a combined mental and physical disability . . . [because] the panic attacks and emotional problems that he had caused him to be physically unable to do certain things." The trial court concluded that the combination of Mr. Bryant's pre-existing mental condition and his pre-existing loss of sight in his right eye resulted in a total vocational disability of seventy-five percent prior to his employment with Genco.[2] The trial court further found that the appellee's treatment for his work-related injury reactivated and exacerbated his underlying depression and panic disorder, rendering him now permanently and totally disabled. Nevertheless, the trial court did not assign a percentage of disability to the aggravation of the appellee's mental condition; instead, the court assigned vocational ratings of twenty-five percent permanent partial disability from the loss of his eye, and thirty-two percent permanent partial disability from the shoulder injury. Finding Mr. Bryant's pre-existing mental injuries were within the purview of Tennessee Code Annotated section 50-6-208(a), the trial court ordered that Genco pay thirty-two percent of the disability benefits due the appellee, and that the Second Injury Fund pay sixty-eight percent of such benefits.

The Special Workers' Compensation Appeals Panel affirmed the trial court's vocational ratings; however, the Panel also assigned a permanent partial disability rating of seventy-five percent for the aggravation of his pre-existing mental disorder resulting from treatment for his shoulder. In addition, the Panel reversed the trial court's judgment against the Second Injury Fund, holding that mental injuries do not fall within the scope of section 50-6-208(a), as the statute emphasizes "permanent *physical* disabilities." (emphasis added). Therefore, the Panel found the Second Injury Fund not liable for any amount of Mr. Bryant's permanent total disability benefits and instead found Genco liable for one hundred percent of the award. Thereafter, Genco filed, and we granted, a motion for full Court review of the Panel's decision pursuant to Tennessee Code Annotated section 50-6-225(e)(5)(B).

---

[2] Dr. Jamieson, Mr. Bryant's treating psychiatrist, testified that, based on a reasonable degree of medical certainty, Mr. Bryant was seventy-five percent permanently impaired due to his mental illness before the industrial accident in 1996, and was impaired to the same extent after the accident.

DISCUSSION

The sole issue to be decided is whether Tennessee Code Annotated section 50-6-208(a) (1999) applies to a pre-existing permanent mental disability, thereby causing the Second Injury Fund to incur liability for Mr. Bryant's permanent total disability. The statutory provision at issue provides in pertinent part:

> (a)(1) If an employee has previously sustained a *permanent physical disability* from any cause or origin and becomes permanently and totally disabled through a subsequent injury, such employee shall be entitled to compensation from the employee's employer or the employer's insurance company only for the disability that would have resulted from the subsequent injury, and such previous injury shall not be considered in estimating the compensation to which such employee may be entitled under this chapter from the employer or the employer's insurance company; provided, that in addition to such compensation for a subsequent injury, and after completion of the payments therefor, then such employee shall be paid the remainder of the compensation that would be due for the permanent total disability out of a special fund to be known as the "second injury fund" therein created.

Tenn. Code Ann. § 50-6-208(a)(1) (emphasis added).

Specifically, our decision turns on whether the phrase "permanent physical disability" includes mental disorders as well. Because the issue requires statutory construction alone, it is solely a question of law; hence, our standard of review is *de novo* without a presumption of correctness of the trial court's findings. See Ivey v. Trans Global Gas & Oil, 3 S.W.3d 441, 446 (Tenn. 1999); Perry v. Sentry Ins. Co., 938 S.W.2d 404, 406 (Tenn. 1996).

The Second Injury Fund, relying on the plain meaning of the statute, argues that the legislature's use of the term "permanent physical disability" must be construed to exclude liability for prior permanent mental disabilities. The Fund asserts that had the legislature intended to include pre-existing mental disorders within the scope of section -208(a), it would have omitted the word "physical." Compensation would then have been allowed for employees sustaining a variety of "permanent disabilities," which would include "loss of mental faculties." See Tenn. Code Ann. § 50-6-207(3)(ii)(ff).

The Court's role in construing statutory language is "to ascertain and give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope." Owens v. State, 908 S.W.2d 923, 925-26 (Tenn. 1995). When the language within the four corners of the statute is unambiguous, the legislative intent must be derived from the statute's face. See Davis v. Reagan, 951 S.W.2d 766, 768 (Tenn. 1997) (citing Carson Creek Vacation Resorts, Inc. v. State Dep't of Revenue, 865 S.W.2d 1, 2 (Tenn. 1993)). Therefore, we must follow the "natural and ordinary meaning" of a statute unless ambiguity requires us to seek clarification. See Davis, 908 S.W.2d at 768.

Looking at the plain and ordinary meaning of the statute, the legislature specifically modified "disability" in section -208(a)(1) with the adjective "physical." A basic rule of statutory construction is that the legislature is presumed to use each word in a statute deliberately, and that the use of each word conveys some intent and has a specific meaning and purpose. Browder v. Morris, 975 S.W.2d 308, 311 (Tenn. 1998). Consequently, where the legislature includes particular language in one section of the statute but omits it in another section of the same act, it is presumed that the legislature acted purposefully in including or excluding that particular subject. See State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991). Applying these rules, we hold that the legislature specifically inserted the adjective "physical" to describe and limit those pre-existing disabilities compensable under section -208(a). Cf. Tenn. Code Ann. §§ 50-6-204 (requiring the employer to furnish any required medical care, specifically including psychological services); 50-6-207 (providing a schedule of compensable permanent partial disabilities, which includes loss of mental faculties).

Because the word "physical" is not defined in the statute, we look to its usual and accepted meaning from sources of common usage. For example, "physical" has been defined in certain dictionaries of the English language as "of or pertaining to the body, as distinguished from the mind." See The American Heritage Dictionary of the English Language 989 (1981). In addition, legal dictionaries have defined "physical" as "[r]elating or pertaining to the body, as distinguished from the mind . . . ." Black's Law Dictionary 1147 (6th ed. 1990). Accordingly, relying on the ordinary meaning of this term, we conclude that this statutory provision contemplates previous physical disabilities only and precludes those prior disabilities relating to the mind.

However, Genco urges us to consider the definition of the phrase "physical disability" as provided in Black's Law Dictionary, which includes disabilities or incapacities caused by "mental weakness or orientation." See Black's Law Dictionary 415 (5th ed. 1979). We decline to adopt this interpretation because of the subsequent use of the word 'physical' to modify the noun 'impairments' in section 50-6-208(a)(3). This subsection states, "[i]n determining the percentage of disability for which the second injury fund shall be liable, no previous *physical impairment* shall be considered unless such impairment was within the knowledge of the employer as prescribed above." (emphasis added). The legislature has plainly stated in section -208 the requirements to be met before making the Second Injury Fund financially responsible for an employee's permanent total disability benefits. We find that the legislature's consistent use of the term "physical" to modify the terms "previous disability" and "previous impairment" makes clear the legislature's intent to expressly exclude pre-existing psychological disorders.

In the alternative, Genco argues that pre-existing psychological disorders should be included within the application of section -208(a) because of the public policy reasons underlying the enactment of the Second Injury Fund: to encourage employers to hire people who have previously sustained disabling injuries. As support for its argument, Genco cites the trial court's decision to include pre-existing mental disabilities "to encourage the hiring of injured workers by limiting employer liability." However, where the language of the statute is unambiguous, courts are not free to alter that meaning by resorting to public policy considerations. See Cavendar v. Huett, 239 S.W. 767 (Tenn. 1921) (stating that the General Assembly has "ample power to determine the public

policy of this state"). It is for the legislature and not the courts to determine whether section -208(a) should authorize payments by the Second Injury Fund for pre-existing mental disabilities.

In this case, the facts are undisputed that the appellee suffered from a psychological condition prior to working at Genco. Shortly after being employed by Genco, he sustained a physical injury to his shoulder while at work. Competent medical evidence supports the trial court's finding that Mr. Bryant's pre-existing mental condition was aggravated by the treatment for this work-related shoulder injury, thereby rendering him permanently and totally disabled pursuant to Tennessee Code Annotated section 50-6-207(4)(B). We hold that Genco must pay for the physical work-related disability and the resulting aggravated mental disability which rendered Mr. Bryant totally and permanently disabled.[3]

For the foregoing reasons, the judgment of the Special Workers' Compensation Appeals Panel is affirmed. Costs of this appeal are taxed to the appellant, Genco Stamping & Manufacturing Company.

_____
WILLIAM M. BARKER, JUSTICE

---

[3] Our decision holding employer Genco liable for the full amount of benefits due to employee Mr. Bryant is supported by Tennessee Code Annotated section 50-6-208(a)(4) (1999), which states: "Nothing in this section shall be construed to limit the employer's liability as provided by law for aggravation of preexisting conditions or disabilities in cases where recovery against the second injury fund is not applicable."