IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 9, 2008 Session

## IN RE ADOPTION OF F.M.B.P.W.

**Appeal from the Chancery Court for Stewart County**
**No. 06-12-183      Robert E. Burch, Judge**

**No. M2007-01691-COA-R3-PT - Filed March 26, 2008**

The biological father of F.M.B.P.W. appeals the termination of his parental rights. He maintains that he should have been personally served rather than served by publication and that he had no notice of the final hearing. Because we have determined that the statutory requirements of service by publication were not met, we vacate the order and remand the case to the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Vacated and Remanded**

ANDY D. BENNETT, J., delivered the opinion of the court, in which PATRICIA J. COTTRELL, P.J., M.S., and FRANK G. CLEMENT, JR., J., joined.

Seth W. Rye, Erin, Tennessee, for the appellant, M.D.W.

Timothy K. Barnes, Clarksville, Tennessee, for the appellee, D.J. and C.J.

## OPINION

This is an appeal from an order terminating the parental rights of the biological father of F.M.B.P.W. In 1999, F.M.B.P.W. was born. Her mother was married at the time, but not to the biological father. The petitioners brought this action on April 19, 2006, to terminate the parental rights of the mother, the legal father,[1] and the biological father and to adopt the child. They allege that the defendants have failed to visit or support the child for more than two years preceding the filing of the petition. The last known address of each defendant is listed in the petition, which asks for service of the petition or, in the alternative, that publication issue. Service by certified mail was attempted on the biological father at his last known address, but it was returned unserved on May 2, 2006. Notice of the lawsuit was published in the *Stewart Houston Times* May 2, 2006, through May

---

[1] A man married to the biological mother of a child born during their marriage is a "legal parent" of the child under Tenn. Code Ann. § 36-1-102(28)(B).

23, 2006.[2] The biological father's mother told him of the notice in the paper, and he wrote the court a letter dated May 3, 2006, alleging that he had been kept from the children and stating, "I just Learned [sic] about this Matter [sic] and want to be with my Kids [sic]." A return address in Greenbrier, Tennessee, was printed on the envelope. A notice of the final adoption hearing was sent to the Greenbrier address on May 15, 2007, but he claims that he did not receive any notice of the hearing until two days after the June 22, 2007 hearing. The biological father appeals and maintains that once his address was known, he should have been personally served. Furthermore, he claims that the termination order was not valid because he had no actual notice of the hearing.

The appellate court reviews the findings of fact of the trial court de novo upon the record with a presumption of correctness unless the preponderance of the evidence is otherwise. *In Re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). Issues of law are reviewed de novo upon the record with no presumption of correctness. *Id.*

Service of process in termination of parental rights cases in chancery courts is accomplished pursuant to the Tennessee Rules of Civil Procedure and state statutes. Tenn. Code Ann. § 36-1-117(m)(1). Tenn. R. Civ. Proc. 4.08 defers to the statutes on constructive service, unless otherwise expressly provided in the rules. Several statutes come into play. Tenn. Code Ann. § 21-1-203(a) allows personal service of process to be dispensed with in certain situations, the pertinent one in this case being subsection (a)(5), "[w]hen the residence of the defendant is unknown and cannot be ascertained upon diligent inquiry." To dispense with process in any of the instances found in subsection (a), subsection (b) requires that the facts "be stated under oath in the bill, or by separate affidavit, or appear by the return." Similarly, Tenn. Code Ann. § 36-1-117(m)(3) states that "[a]ny motion for an order of publication in these [termination] proceedings shall be accompanied by an affidavit of the petitioners or their legal counsel attesting, in detail, to all efforts to determine the identity and whereabouts of the parties against whom substituted service is sought." The order is to run four consecutive weeks in the newspaper designated in the order or by court rule. Tenn. Code Ann. § 21-1-204(b).

Tenn. Code Ann. § 21-1-203(a) requires "diligent inquiry" to attempt to determine the unknown father's residence. It is a basic rule of statutory construction "that the legislature is presumed to use each word in a statute deliberately, and that the use of each word conveys some intent and has a specific meaning and purpose." *Scales v. City of Oak Ridge*, 53 S.W.3d 649, 654 (Tenn. 2001) (quoting *Bryant v. Genco Stamping & Mfg. Co.*, 33 S.W.3d 761, 765 (Tenn. 2000)). In *Freeman v. City of Kingsport*, 926 S.W.2d 247 (Tenn. Ct. App. 1996), the Court of Appeals determined that the "diligent inquiry" language of Tenn. Code Ann. § 21-1-203 essentially codifies the constitutional due process standard that "actual notice is required if the interested party's name

---

[2] We presume the notices ran May 2, May 9, May 16 and May 23, 2006, although the record is unclear as to the exact dates of publication.

and address are reasonably ascertainable." *Freeman,* 926 S.W.2d at 250.[3] Only when diligent inquiry fails to ascertain the residence of the defendant may service by publication be used.

Tenn. Code Ann. § 36-1-117(m)(3) places the burden of demonstrating diligent inquiry upon the petitioners by requiring a detailed affidavit from the petitioners or their legal counsel attesting to all efforts made to determine the whereabouts of the unserved party. In this case, there is no affidavit from the petitioners or their attorney detailing their efforts to locate the biological father. The record is devoid of any such information beyond the petitioners contacting the Putative Father Registry. The petition itself does not say the biological father cannot be found, although it does suggest that possibility may exist by praying in the alternative for service by publication. There is no order of the court making any findings about efforts to locate him. There is no transcript or statement of the evidence as to any testimony in this regard. From this record, it appears that the petitioners checked the Putative Father Registry[4], attempted service by certified mail to an old address and then published the notice.[5]

It should be noted that the May 3, 2006 letter from the biological father to the court was filed by the clerk on May 19, 2006. The envelope for the letter had a return address. This raises the question of whether petitioners or their counsel knew of the biological father's address before the completion of the service by publication. The record, however, does not tell us.

The petitioners contend that the biological father waived the defect in constructive service by filing an answer to the petition, the May 3, 2006, letter, that did not raise the defect as a defense.[6] That letter was treated as an answer by the clerk and by the court.[7] In order to determine whether the letter should be treated as an answer, we must look to whether the letter meets the basic requirements of an answer. It was mailed to the Clerk and Master at Dover "ATTN Case of [F.M.W.]." The letter, addressed "To Whom it may Concern," named the three children the biological father sired with the mother. The document is not called an answer by the author, rather internally it is referred to as "this letter." It contains a brief explanation of how the children got into their present situation and states that "[t]his whole time Ive [sic] been keep [sic] from seeing or even talking to the kids on the phone." It concludes "I just Learned [sic] about this Matter [sic] and want to be with my Kids [sic]. They have

---

[3] *Freeman* involved an *in rem* action. The Court quotes *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983), to show that efforts are required "to provide actual notice to all interested parties *comparable to the efforts that were previously required only in in personam actions.*" *Freeman*, 926 S.W.2d at 250 (quoting *Mennonite Bd.*, 462 U.S. at 796 n. 3)(emphasis added in *Freeman*)

[4] This is required by Tenn. Code Ann. 36-1-116(b)(13) and must appear in the petition.

[5] It is interesting to note that the certified mail came back unserved on May 2, 2006, and the publication began to run on that same day.

[6] Tenn. R. Civ. Pro. 12.08 indicates that a party waives all defenses and objections not raised by motion, answer or reply, with certain exceptions not applicable here.

[7] Default judgments were entered against the mother and the legal father, but not against the biological father.

been keep [sic] from me unwillingly. I've [sic] not done anything But [sic] try to be a good Father [sic] to them."

People who decide to represent themselves deserve fair and equal treatment. *Whitaker v. Whirlpool Corp.*, 32 S.W.3d 222, 227 (Tenn. Ct. App. 2000). Many pro se litigants have little knowledge of the legal system and the courts should take this into account. *Irvin v. City of Clarksville*, 767 S.W.2d 649, 652 (Tenn. Ct. App. 1988). Courts must be careful, however, not to be so mindful of being fair to a pro se litigant that we are not fair to the litigant's adversary. *Nash v. Waynick*, No. M2000-02096-COA-R3-CV, 2001 WL 36073, *3 (Tenn. Ct. App. April 12, 2001) (no Tenn. R. App. P. 11 application filed). Courts, therefore, apply the substantive and procedural rules that all parties are required to obey to pro se and represented litigants alike. *Edmundson v. Pratt*, 945 S.W.2d 754, 755 (Tenn. Ct. App. 1966). Courts will give pro se litigants who have no legal training some leeway in drafting court documents. *Whitaker*, 32 S.W.3d at 227.

Clearly, the biological father's letter does not conform to the usual format of an answer or other pleading as discussed in Tenn. R. Civ. P. 10.01, but that fact alone is not determinative. *See Nash*, 2001 WL 36073 at *3. He sent the letter to the court clerk immediately upon becoming aware of the published notice. There is no indication that it was mailed to or otherwise served on the other parties, so it cannot be said that it was served on them in accordance with Tenn. R. Civ. P. 5.01. While the letter attempts to explain the failure to contact the children, it does not attempt to admit or deny the averments in the complaint as required by Tenn. R. Civ. P. 8.02 – indeed there is no indication that the biological father had even seen the complaint at the time the letter was written. Viewing all these facts as a whole, it is our opinion that this letter was not an answer within the legal meaning of the term and it did not waive the defects in constructive service.

Even though the trial court found that "[a]ll persons entitled to notice of the proceedings have been served with process, and all necessary Parties are before the Court," this finding is not supported by the statutorily-required evidence that should be part of the record. Thus, it is evident from this record that the petitioners did not comply with the statutory "diligent inquiry" requirement for service by publication.[8] Therefore, the biological father was not before the court and all proceedings held pursuant to the notice were void. *Overby v. Overby*, 457 S.W.2d 851, 852 (Tenn. 1970).

---

[8] At oral argument, the biological father's counsel admitted that he was not challenging whether the petitioners met the conditions precedent for service by publication. However, Tenn. R. App. P. 13(b) permits the appellate court to consider issues not raised by the parties "in order, among other reasons: (1) to prevent needless litigation, (2) to prevent injury to the interests of the public, and (3) to prevent prejudice to the judicial process." We find that reason (3) applies in this instance.

The order terminating the parental rights of the biological father and ordering the adoption of F.M.B.P.W. is vacated, and the case is remanded to the trial court for proceedings consistent with this opinion. The issues raised by the biological father are pretermitted by this ruling. Costs of appeal are assessed against the appellees, for which execution shall issue, if necessary.

_____
ANDY D. BENNETT, JUDGE