IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 4, 2025 Session

## JAYESH PATEL ET AL. v. SHAILESH PATEL ET AL.

**Appeal from the Circuit Court for Williamson County**
No. 23CV-608     Erin Nations, Judge
_____

### No. M2024-01371-COA-R3-CV
_____

This appeal arises from the denial of a petition to dismiss under the Tennessee Public Participation Act ("TPPA"), Tenn. Code Ann. §§ 20-17-101 to -110. The plaintiff-respondents, Jayesh Patel, Devesh Patel, and Vimal Patel ("Plaintiffs"), filed suit in Tennessee asserting claims for defamation, false light invasion of privacy, and abuse of process against the defendants-petitioners, Shailesh Patel, BMGPC, LLC, Parul N. Patel, Dharmesh Patel, Ujval Patel, and Jyoti Patel (collectively, "Defendants"), who had initiated a related action against Plaintiffs in California state court. In response to the Tennessee action, Defendants filed a petition to dismiss pursuant to the TPPA, asserting that Plaintiffs filed their Complaint in response to Defendants' exercise of their rights to petition and of free speech. Plaintiffs responded to the TPPA Petition and sought to amend their complaint to add claims that predated the filing of the California lawsuit. At a joint hearing on both the TPPA Petition and the Motion to Amend, the trial court granted the Motion to Amend and instructed Defendants that, if they proceeded on the TPPA Petition, the court would apply it to the First Amended Complaint. Defendants decided to press forward with the TPPA Petition. After considering the evidence produced by the parties, the trial court denied the TPPA Petition, concluding that the statute did not apply because Defendants failed to make a prima facie showing that the action was based on, related to, or in response to their exercise of the rights to petition or of free speech. This appeal followed. We respectfully disagree with the trial court's decision. We conclude that Defendants established a prima facie case that Plaintiffs initiated this action in response to Defendants' exercise of both their right to petition and their right to free speech. Accordingly, we reverse the trial court's judgment and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which W. NEAL MCBRAYER and JEFFREY USMAN, JJ., joined.

Andrew J. Pulliam and Emma M. Weintraub, Nashville, Tennessee, for the appellants, Shailesh Patel, BMGPC, LLC, Parul N. Patel, Dharmesh Patel, Ujval Patel, and Jyoti Patel.

W. Scott Sims and Tyler D. Ricker, Nashville, Tennessee, and Christopher J. Clark (*pro hac vice*), Jeffrey D. Rotenberg (*pro hac vice*), and Leon Kotlyar (*pro hac vice*), New York, New York, for the appellees, Jayesh Patel, Devesh Patel, and Vimal Patel.

## OPINION

### FACTS AND PROCEDURAL HISTORY

Plaintiff Jayesh "Jay" Patel is a Tennessee businessman and entrepreneur. He is an active participant in the Indian American Patel community in Tennessee and the Leuva Patidar Samaj of USA ("LPS"), an affinity organization.[1] While his main business interests are in the hospitality industry, Jay Patel has been involved in a variety of startup organizations, including ProfitPay Technologies, Inc. ("ProfitPay"), an online payment processing company. Plaintiffs Devesh Patel and Vimal ("Vince") Patel serve on the Board of Directors for ProfitPay and are also active members of the Indian American Patel and LPS communities. Defendants are investors in ProfitPay, either directly or indirectly through holding companies. They are also active in both the Indian American Patel and LPS communities.

In 2018, Jay Patel and an associate solicited investors for ProfitPay. There are approximately 225 investors in ProfitPay, many of whom are LPS members. To date, none of the investors has received any distributions or returns on their investments. Jay Patel was not an officer or employee of ProfitPay, but he was on the Board of Directors along with co-plaintiffs. Defendant Tanmay Kar was the fourth member on the Board of Directors; he also served as ProfitPay's CEO.

Between 2018 and 2022, ProfitPay suffered losses. The Board determined that the company's and its investors' interests favored a sale of the business. By majority vote, the Board approved the sale of ProfitPay's assets to Alinor Holdings d/b/a Onriva. As part of the deal, Jay Patel invested an additional $3 million in ProfitPay, becoming its majority shareholder. The sale closed on April 18, 2023.

During this time, the relationship between Kar and the other Board members soured. Kar was terminated for wrongful conduct. Kar began sending messages to investors and other stakeholders about Plaintiffs' businesses. In April 2023, Kar filed a complaint ("the Kar Complaint") in the United States District Court for the Northern District of California

---

[1] As the First Amended Complaint explains, the Indian American Patel community is a close-knit group whose members share social and business ties. The Leuva Patidar Samaj of USA is an active community organization for the Indian American Patel community based in Tennessee.

against Jay Patel. Defendant Reshma Kamath signed the complaint as Kar's attorney. In the complaint, Kar alleged that Jay Patel was engaged in an "ongoing Ponzi scheme at Onriva." Kar also began sending emails to ProfitPay's investors and other stakeholders, accusing Plaintiffs of wire fraud and unspecified securities law violations.

The Kar Complaint was dismissed on August 10, 2023, for lack of diversity jurisdiction, but the Federal District Court judge allowed Kar to file an amended complaint. Kar's amended complaint added a federal securities fraud claim but gave no facts giving rise to such claim. Thus, the amended complaint was dismissed with prejudice on October 12, 2023.

Meanwhile, Defendants repeated Kar's statements to investors to other members of the Indian American Patel and LPS communities. Further, on August 11, 2023, Defendants sent a settlement demand to Plaintiffs through counsel. The letter threatened to file a derivative suit unless they were paid double their investment and attorney's fees. Attached to the letter was a proposed complaint alleging that Plaintiffs and other investors breached their fiduciary duties to the company and its shareholders by engaging in self-dealing transactions and orchestrating an unauthorized asset sale.

After their demands were rejected, Defendants filed the proposed complaint against Plaintiffs in California state court on September 18, 2023 ("the California Complaint").

On December 12, 2023, Plaintiffs commenced the present action against Defendants and others in Tennessee state court. The Complaint alleged that Defendants engaged in "a systematic effort to harm Plaintiffs in response to displeasure" with the success of investments in ProfitPay and Kar's termination. Plaintiffs asserted that Defendants were liable for defamation, false light invasion of privacy, and abuse of process based on allegations in the California Complaint, such as: Defendants were victims of a Ponzi scheme "orchestrated by" Jay Patel; Jay Patel knew that many of the investors in ProfitPay were unaccredited and "nonetheless preyed on them"; ProfitPay's payment processing was actually handled by a separate company connected to Jay Patel; and Jay Patel misrepresented the financial status of ProfitPay's predecessor to investors and potential investors.

On January 26, 2024, Defendants filed an Answer, a Motion for Summary Judgment, and a Petition to Dismiss Pursuant to the TPPA. Their main argument was that the Tennessee action was based on, related to, or in response to their exercise of the right to free speech and/or right to petition because all the alleged actionable statements came from the California Complaint. They also asserted the absolute litigation privilege as a defense.

The TPPA Petition was supported by identical declarations from three Defendants, Shailesh Patel, Dharmesh Patel, and Ujval Patel. The declarations stated as follows:

4. . . . The allegations in the California Complaint are intentionally specific about the alleged improper actions of [Plaintiffs]. The California Case Complaint includes the alleged actionable statements set forth in this case in order to establish a prima facie claim for breach of fiduciary duty in California and avoid arguments that the California Complaint lacks specificity. We included those specific allegations in the California Complaint to explain to the California court the improper investment actions by the California Case Defendants. The alleged actionable allegations from the California Complaint—when read with the entire California Complaint—include information about why the California Case Defendants were conflicted with respect to their actions as fiduciaries and why they needed to trick or miscommunicate with existing and potential investors, i.e., to raise money to continue their improper investment schemes, as well as information about the specific means showing how the improper investment activities and fundraising were done by the California Case Defendants. The alleged actionable statements are all relevant to the claims and other allegations in the California Complaint.

On April 5, 2024, Plaintiffs filed a response in opposition to the TPPA Petition and a Motion for Leave to Amend Complaint with the Proposed Amended Complaint attached. With the Response to the TPPA Petition, Jay Patel provided an affidavit in which he stated:

23. . . . [T]he [Defendants] sent ProfitPay's counsel a letter threatening to file a lawsuit in California state court unless they were paid double their claimed investments in ProfitPay, as well as their attorneys' fees. The letter attached a proposed complaint containing false and defamatory allegations against me, some of which echoed the false and defamatory allegations Kar made in his California federal lawsuit. I am informed and believe that [Defendants] circulated these allegations within the Indian American Patel community before threatening to bring their California state court lawsuit. . . . .

. . . .

26. The statements made by [Defendants] within and outside of the California state court complaint have harmed my reputation within the Indian American Patel community and the hospitality industry.

27. As one example of the harm to my reputation, certain investors in ProfitPay have called my integrity into question, and some have even circulated messages calling me "Bernie Madoff 2.0."

- 4 -

28. As another example of the harm to my reputation, the Company Dime, a travel and hospitality industry publication, published an article repeating the allegations in the California state court complaint to a broader audience.

Accordingly, the Proposed Amended Complaint contained new allegations that Defendants spread false accusations and rumors about the Board members in the Indian American Patel community before filing the California Complaint. Plaintiffs argued that the action was not based solely on the allegations in the California complaint, so it was not subject to dismissal under the TPPA.

The additional allegations in the First Amended Complaint include:

2. Plaintiffs are members of and enjoy strong reputations within the Indian American Patel Community, a close-knit group whose members share important social and business ties. Defendants, several of whom are also members of the community, have sought to harm Plaintiffs' reputations within the community in Tennessee and nationwide, as well as in India.

7. Defendants have made false and defamatory statements . . . defaming Plaintiffs, placing them in a false light, and causing harm to their reputations in Tennessee, nationwide, and in India. . . .

.    .    .

44. . . . Kar also began trying to disparage and discredit Jay, Devesh, and Vince by sending almost daily emails to ProfitPay investors and other stakeholders, many of whom reside in Tennessee. In addition to repeating the false claim that Jay and Onriva were engaged in a Ponzi scheme, these emails included false and defamatory accusations that Jay, Devesh, and Vince were guilty of wire fraud and unspecified securities law violations. . . .

.    .    .

52. On information and belief, while Kar's lawsuit was proceeding, Shailesh Patel, BMGPC, LLC, Parul N. Patel, Dharmesh Patel, Ujval Patel, and Jyoti Patel (the "Patel Defendants") began spreading false accusations and rumors regarding Jay, Devesh, and Vince in the Indian American Patel community. . . .

.    .    .

55. . . . [Defendants] filed the Derivative Complaint in California Superior Court for Alameda County on September 18, 2023 . . . The false allegations have been disseminated to ProfitPay's investors and members of the LPS community, many of whom reside in Tennessee. . . .

- 5 -

. . . .

57. In perhaps the most egregious example of impertinent accusations, the first paragraph of the Derivative Complaint alleges that [Defendants], "among hundreds of other retail investors, are victims of a classic 'Ponzi scheme' orchestrated by" Jay and Harmer. This allegation, which [Defendants] spread throughout the Indian American Patel community before filing their lawsuit, is false. . . .

. . . .

63. The false and defamatory statements made by Defendants have caused serious harm and threaten further harm to the reputations of Jay, Devesh, and Vince in Tennessee and elsewhere, as they were disseminated to ProfitPay investors and LPS community members in Tennessee prior to the filing of any lawsuits. The filing of the Kar Complaint and the Derivative Complaint has only amplified the reach and effect of the statements.

. . . .

69. As another example of the fallout from the false and defamatory accusations in the Derivative Complaint, a reporter at the Company Dime, a travel industry publication, published an article repeating the allegations to a broader audience, including that Plaintiffs engaged in a Ponzi scheme. . . .

70. As a result of the false and defamatory allegations in the Derivative Complaint, which were circulated by [Defendants] prior to the filings of the complaint, Jay, Devesh, and Vince have been forced to send ProfitPay shareholders a letter to correct the record. . . .

. . . .

73. Defendants' false and defamatory statements caused tortious injury to Jay, Devesh, and Vince within this state. Jay resides in Tennessee and each of Jay, Devesh, and Vince enjoys a reputation with LPS members in Tennessee and nationwide that has been damaged by Defendants' allegations.

In response to the Motion to Amend, Defendants argued that, even if the court allowed the proposed amendment, the claims against them should be dismissed. They submitted a declaration from their California counsel with a copy of the settlement demand letter and described the circumstances that prompted it. Defendants also argued that an amended complaint would not moot the TPPA Petition or their Motion for Summary Judgment.

By agreement, the trial court held a joint hearing on May 15, 2024, for the Motion to Amend the complaint and the TPPA Petition. At the hearing, the trial court informed counsel that it was inclined to grant the Motion to Amend. Defendants nevertheless proceeded on the TPPA Petition. The trial court offered them additional time to "file anything supplemental," but Defendants declined this offer. After the argument, the trial court took the matter under advisement.

On June 13, 2024, the trial court issued a written memorandum and order granting the Motion to Amend and denying the TPPA Petition. As requested by Defendants, the trial court analyzed the TPPA Petition based on the First Amended Complaint and the supporting and opposing affidavits and declarations presented by each party. With respect to the Motion to Amend, the court stated:

> To effectuate the legislative intent of exposing truly meritless legal actions, a plaintiff may amend its complaint in attempts to supplement its allegations of false and defamatory statements, as well as to clarify the timing of when those alleged statements were made. This would permit a court to determine whether it is presented with a truly meritorious lawsuit, rather than it being unable to resolve a petition to dismiss due to a lack of clarity within the complaint. However, this does not give a plaintiff blanket permission to create a "moving target" for a TPPA movant by adding any number of additional claims or only then alleging sufficient facts to clarify the basis of their lawsuit.

Since Defendant's declarations did not address the additional factual averments made in the amended complaint, the trial court held:

> [Defendants] do not offer any evidentiary support through their declarations that the alleged statements were intended to accomplish the goals which would afford them protection under Tenn. Code Ann. § 20-17-103(4). Therefore, [Defendants] have failed to establish a prima facie case that these alleged actionable statements are protected under the TPPA as exercise of their right to petition.

The court also rejected Defendants' argument that their alleged speech qualified as a matter of public concern because Defendants failed to support this argument with any evidentiary proof.

Shortly after the trial court entered its order, Plaintiffs filed their First Amended Complaint. Defendants then filed an answer and a new TPPA Petition that specifically addressed the allegations in the First Amended Complaint. They supported their new petition with revised declarations and other evidence. The same day, Defendants filed a motion to amend the court's TPPA ruling under Rule 59.04 or to make additional findings under Rule 52.02. Alternatively, they sought clarification that the trial court's ruling did

not bar them from filing the new TPPA Petition. The trial court denied these motions in an order on August 28, 2024.

This appeal followed.

## ISSUES

Plaintiffs and Defendants each present issues for our consideration in this appeal, which we restate as follows:

(1) Whether Defendants' TPPA Petition was moot as a matter of law when the trial court allowed Plaintiffs to file their First Amended Complaint.

(2) Whether Defendants met their burden under the TPPA to establish a prima facie case that the claims against them were based on, related to, or in response to their exercise of the right to petition and/or the right to free speech on a matter of public concern.

## STANDARD OF REVIEW

The TPPA requires a petitioner to establish "a prima facie case" that the statute applies. Tenn. Code Ann. § 20-17-105(a). Whether a party has made a prima facie showing for purposes of a TPPA petition is a question of law. *SmileDirectClub, Inc. v. NBCUniversal Media, LLC*, 708 S.W.3d 556, 570 (Tenn. Ct. App. 2024); *see Charles v. McQueen*, 693 S.W.3d 262, 272–73 (Tenn. 2024). Accordingly, we review the trial court's determination de novo, with no presumption of correctness. *See Ultsch v. HTI Mem'l Hosp. Corp.*, 674 S.W.3d 851, 860 (Tenn. 2023).

To the extent this appeal requires us to construe the TPPA, our review is likewise de novo, with no presumption of correctness. *Flade v. City of Shelbyville*, 699 S.W.3d 272, 281 (Tenn. 2024). In construing a statute, we begin with its text, giving the words "their natural and ordinary meaning in the context in which they appear." *Id*. at 285 (quoting *Coffee Cnty. Bd. of Educ. v. City of Tullahoma*, 574 S.W.3d 832, 839 (Tenn. 2019)). When the statutory language is clear and unambiguous, we look no further than the text itself to determine its meaning. *Id*. At the most fundamental level, "we seek to 'ascertain and give effect to the legislative intent without duly restricting or expanding a statute's coverage beyond its intended scope.'" *Id.* (quoting *Falls v. Goins*, 673 S.W.3d 173, 180 (Tenn. 2023)).

ANALYSIS

The TPPA is Tennessee's anti-SLAPP statute.[2] Its purpose is "to encourage and safeguard the constitutional rights of persons to petition, to speak freely . . . and, at the same time, protect the rights of persons to file meritorious lawsuits for demonstrable injury." Tenn. Code Ann. § 20-17-102. To that end, the TPPA directs that it "shall be construed broadly to effectuate its purpose and intent." *Id*.

The TPPA establishes a procedure for the "swift dismissal of non-meritorious claims." *Charles v. McQueen*, 693 S.W.3d 262, 267 (Tenn. 2024). Under the TPPA, if a legal action "is filed in response to a party's exercise of the right of free speech, right to petition, or right of association," the party may file a petition to dismiss within sixty days of service or "at any later time that the court deems proper." Tenn. Code Ann. § 20-17-104(a)–(b). The exercise of the right to petition is defined as "a communication that falls within the protection of the United States Constitution or the Tennessee Constitution and

> (A) Is intended to encourage consideration or review of an issue by a federal, state, or local legislative, executive, judicial, or other governmental body; or
>
> (B) Is intended to enlist public participation in an effort to effect consideration of an issue by a federal, state, or local legislative, executive, judicial, or other governmental body.

*Id*. § 20-17-103(4)(A)–(B). The exercise of the right of free speech is defined as "a communication made in connection with a matter of public concern or religious expression that falls within the protection of the United States Constitution or the Tennessee Constitution." *Id*. § 20-17-103(3).

Once a TPPA petition has been filed, courts engage in a two-step analysis to decide it, as explained by our Supreme Court in *Charles v. McQueen*:

> First, the court determines whether the petitioner has made a prima facie case that the challenged lawsuit "is based on, relates to, or is in response to [the petitioner's] exercise of the right to free speech, right to petition, or right of association." *Id.* § 20-17-105(a). If the petitioner has not made this showing, the court denies the petition. *See Id.* § 20-17-105(b). But if the petitioner

---

[2] "The term 'SLAPP' stands for 'strategic lawsuits against public participation,' meaning lawsuits which might be viewed as 'discouraging the exercise of constitutional rights, often intended to silence speech in opposition to monied interests rather than to vindicate a plaintiff's right." *Nandigam Neurology, PLC v. Beavers*, 639 S.W.3d 651, 657 (Tenn. Ct. App. 2021) (quoting Todd Hambidge, et al., *Speak Up. Tennessee's New Anti-SLAPP Statute Provides Extra Protections to Constitutional Rights*, 55 TENN. B.J. 14 (Sept. 2019)).

succeeds at the first step, the court next determines whether the respondent has made a prima facie case for each essential element of his claim. *Id.* If the respondent meets this burden, the court must deny the petition unless "the petitioning party establishes a valid defense to the claims in the legal action." *Id.* § 20-17-105(b)–(c). Otherwise, the court must grant the petition and dismiss the suit with prejudice. *Id.* § 20-17-105(e).

*Id.*, 693 S.W.3d at 268–68.

At the outset, Defendants were required to make a prima facie showing that Plaintiffs' claims were "based on, relate[d] to, or [were] in response to" their exercise of the right of free speech, the right to petition, or the right of association. Tenn. Code Ann. § 20-17-105(a). In addressing this threshold requirement, the trial court evaluated the TPPA Petition in light of the allegations set forth in the First Amended Complaint.

On appeal, Defendants raise two related arguments. First, they contend that the trial court erred by failing to deem their TPPA petition moot as a matter of law upon the filing of the First Amended Complaint. Second, they assert that the trial court erred in concluding that they failed to meet their burden of establishing that the plaintiffs' claims implicate protected activity under the TPPA.

## I. MOOTNESS OF THE TPPA PETITION

The Defendants argue that the trial court erred by failing to find their TPPA petition moot because of the filing of the Plaintiffs' amended complaint. We respectfully disagree because Defendants acquiesced to applying their TPPA Petition to the First Amended Complaint by reasserting their Petition during the May 15 hearing.

The trial court informed the parties at the hearing that it would proceed with the Motion to Amend before addressing the TPPA Petition. The trial court twice asked Defendants whether they would like the opportunity to supplement their petition, as the court intended to grant the Motion to Amend. Defendants declined to do so, electing instead to proceed on their original petition despite the express invitation to "file anything supplemental."

The trial court permitted Plaintiffs to amend their complaint, finding that the amendment did not assert new claims against Defendants but instead clarified the sequence of events surrounding the alleged defamatory statements, including whether those statements were made in connection with a judicial proceeding. The First Amended Complaint alleges that Defendants made statements that harmed Plaintiffs' reputations by disseminating them to ProfitPay investors and members of the LPS community in Tennessee prior to the filing of any lawsuit.

- 10 -

In Tennessee, the "original complaint is superseded, and its effect as a pleading destroyed, by filing an amended complaint complete in itself, [] which does not refer to or adopt the original as part of it." *Ingram v. Gallagher*, 671 S.W.3d 428, 436 (Tenn. 2023) (quoting *Louisville & N.R. Co. v. House*, 56 S.W. 836, 836 (Tenn. 1990)). Typically, once a complaint is amended, any motions pending directed towards the original complaint become moot. *See Hanson v. Levan*, 647 S.W.3d 85, 90 (Tenn. Ct. App. 2021) (concluding that, once the order was entered permitting the plaintiff to file an amended complaint, a motion to amend the answer to the original complaint became moot); *see McBurney v. Aldrich*, 816 S.W.2d 30, 35 (Tenn. Ct. App. 1991) (ordering that all pleadings other than the amended complaint should be stricken, including a motion to dismiss the original complaint, when the trial court granted leave to amend).

In this case, when the trial court granted leave to amend, the First Amended Complaint superseded the original complaint and became the operative pleading. Defendants elected not to supplement or otherwise revise their TPPA Petition and instead continued to rely on that petition at the May 15 hearing, after the Amended Complaint had become operative. By doing so, Defendants necessarily waived any objection to the trial court's application of the TPPA Petition to the First Amended Complaint. Relief need not be granted to a party who is responsible for the alleged error. Tenn. R. App. P. 36(a). The trial court was correct in applying the original TPPA Petition to the First Amended Complaint, as Defendants essentially reasserted the petition as to the amended complaint.

## II. Prima Facie Case Under the TPPA

The Defendants assert that the trial court erred in concluding that they failed to meet their burden of establishing that the plaintiffs' claims implicate protected activity under the TPPA.

If legal action is filed in response to a party's exercise of the right of free speech, right to petition, or right of association, the TPPA provides that the party may petition the court to dismiss the legal action. Tenn. Code Ann. § 20-17-104(a). The statute provides a structured burden-shifting framework for evaluating whether a legal action should be dismissed at an early stage. *Charles*, 693 S.W.3d at 267. First, the petitioning party has the burden of making a *prima facie* case that a legal action "is based on, relates to, or is in response to that party's exercise of the right to free speech, right to petition, or right of association." Tenn. Code Ann. § 20-17-105(a). If that burden is met, the responding party must then establish a prima facie case for each essential element of its claim. Tenn. Code Ann. § 20-17-105(b). Even if the responding party satisfies this burden, dismissal is still required if the petitioning party establishes a valid defense. Tenn. Code Ann. § 20-17-105(c).

In resolving a TPPA petition, the court considers "supporting and opposing sworn affidavits stating admissible evidence" and other admissible proof. *Id.* § 20-17-105(d); *see Nandigam Neurology, PLC v. Beavers*, 639 S.W.3d 651, 660 (Tenn. Ct. App. 2021). Our

- 11 -

Supreme Court has explained that establishing a prima facie case under the TPPA requires "[a] party's production of enough evidence to allow the fact-trier to infer the fact at issue and rule in the party's favor." *Charles*, 693 S.W.3d at 280-81 (quoting *prima facie case*, Black's Law Dictionary 1441 (11th ed. 2019)). In this respect, the prima facie requirement is analogous to the evidentiary standards governing motions for directed verdict and summary judgment. *SmileDirectClub*, 708 S.W.3d at 572. Accordingly, courts must view the evidence in the light most favorable to the nonmoving party and disregard countervailing evidence. *Charles*, 693 S.W.3d at 281.

Finally, the TPPA includes a fee-shifting provision. If a petition is granted, the court "shall award" the petitioning party costs, attorney's fees, and other expenses, as well as any additional relief necessary to deter similar conduct. Tenn. Code Ann. § 20-17-107(a). Conversely, if the petition is frivolous or filed solely for delay, the court may award fees and costs to the responding party. *Id.* § 20-17-107(b).

In this case, the trial court found that the allegations in the First Amended Complaint, made before the filing of the California complaint, were not made for the purpose of "encourag[ing] consideration or review of an issue by a federal, state, or local legislative, executive, judicial, or other governmental body." Tenn. Code Ann. § 20-17-103(4). Additionally, the trial court was not persuaded that Plaintiffs' statements were related to matters of public concern, as they did not support the argument with any evidence. *See* Tenn. Code Ann. § 20-17-103(6)(E). There is no dispute that the right of association is not implicated in this case. The issue on appeal instead centers on whether Defendants satisfied their burden of showing that Plaintiffs' First Amended Complaint arises from Defendants' exercise of the right to petition and the right to free speech.

A. The Right to Petition

As stated, the TPPA defines the "[e]xercise of the right to petition" as "a communication that . . . is intended to encourage consideration or review of an issue by a federal, state, or local legislative, executive, judicial, or other governmental body." Tenn. Code Ann. § 20-17-103(4)(A). The "exercise of the right to petition contains no statutory requirement requiring the activity to involve a 'matter of public concern.'" *Doe v. Roe*, 638 S.W.3d 614, 619 (Tenn. Ct. App. 2021). The right to petition, as applicable to the present case, requires a communication intended to elicit consideration or review by a state judicial body. *Id.* at 622. "According to the TPPA, 'communication' is the 'making or submitting of a statement or document in any form or medium, including oral, written, audiovisual, or electronic.'" *Id.*

In interpreting a statute, "[w]hen the language within the four corners of the statute is unambiguous, the legislative intent must be derived from the statute's face." *Bryant v. Genco Stamping & Mfg. Co., Inc.*, 33 S.W.3d 761, 765 (Tenn. 2000) (citing *Davis v. Reagan*, 951 S.W.2d 766, 768 (Tenn. 1997)). The "natural and ordinary meaning" should be applied to the language of a statute, unless there exists ambiguity requiring further

clarification. *Id*. at 765. The plain text of the TPPA shows that the right to petition requires only a communication intended to elicit consideration or review by a judicial body. *See* Tenn. Code Ann. § 20-17-103(4).

Plaintiffs contend that the actionable statements fall outside the scope of the TPPA because they do not relate to Defendants' exercise of the right to petition. In support, they focus on the additional allegations in the First Amended Complaint concerning statements made prior to the filing of the California Complaint. The trial court agreed, reasoning that the declarations submitted in support of the TPPA Petition did not address these newly alleged statements. Without evidentiary support, the court denied the TPPA Petition.

We respectfully disagree with the trial court's conclusion. Under the TPPA, a petitioning party satisfies its initial burden by making a prima facie showing that the challenged legal action "is based on, relates to, or [is] in response to" protected activity. Tenn. Code Ann. § 20-17-105(a). The filing of the California Complaint constitutes an exercise of Defendants' "right to petition" under the TPPA, as it is a communication intended to encourage review by a judicial body. *See* Tenn. Code Ann. § 20-17-103(4). The question, therefore, is not whether every alleged statement was made in connection with the California Complaint itself, but whether Plaintiffs' claims are "based on, relate to, or [are] in response to" that protected activity. Tenn. Code Ann. § 20-17-105(a).

Here, both the original Complaint and the First Amended Complaint plainly relate to the California Complaint. Although the First Amended Complaint adds allegations concerning pre-filing statements, these additional claims do not sever the connection to the petitioning activity. The TPPA does not require that every challenged statement independently qualify as protected activity; it requires only that the legal action "relate to" such activity. *See Goldberger v. Scott*, No. M2022-01772-COA-R3-CV, 2024 WL 3339314 at *6 (Tenn. Ct. App. July 9, 2024). On this basis, we conclude that Defendants have made a prima facie showing that the matters alleged in the First Amended Complaint implicate their right to petition.

### B. The Right to Free Speech

An "exercise of the right of free speech" is defined by the TPPA as "a communication made in connection with a matter of public concern or religious expression that falls within the protection of the United States Constitution or the Tennessee Constitution." Tenn. Code Ann. § 20-17-103(3). Matters of public concern are "broadly defined" under the statute. *Doe v. Roe*, 638 S.W.3d at 619. A "matter of public concern" includes issues relating to:

(A) Health or safety;

(B) Environmental, economic, or community well-being;

- 13 -

(C) The government;

(D) A public official or public figure;

(E) A good, product, or service in the marketplace;

(F) A literary, musical, artistic, political, theatrical, or audiovisual work; or

(G) Any other matter deemed by a court to involve a matter of public concern.

Tenn. Code Ann. § 20-17-103(6).

As was previously stated, in interpreting a statute, "[w]hen the language within the four corners of the statute is unambiguous, the legislative intent must be derived from the statute's face." *Bryant*, 33 S.W.3d at 765 (citing *Davis*, 951 S.W.2d at 768). The "natural and ordinary meaning" should be applied to the language of a statute, unless there exists ambiguity requiring further clarification. *Id*. at 765. Additionally, the Tennessee Supreme Court has emphasized that the TPPA should be construed broadly to effectuate the legislative intent. *Charles*, 693 S.W.3d at 276-77.

The trial court found that the alleged speech did not qualify as a matter of public concern because Defendants failed to support their argument with any evidentiary proof. In considering the declarations of both parties, the trial court found that Defendants did not address the circumstances under which they made the alleged actionable statements before the California Complaint was filed.

On appeal, Plaintiffs argue that disputes over individual investment losses are matters of private, rather than public, concern. They contend that Defendants have therefore failed to demonstrate that the statements at issue relate to their right to speak on a matter of public concern. According to Plaintiffs, the statements were made only to a limited number of individuals within a small group of investors in a private company and were intended to harm the Plaintiffs' reputations.

Defendants assert that the instant controversy involves a matter of public concern. They point out that at least 225 individuals, including members of the Indian American Patel and the LPS communities, invested tens of millions of dollars in ProfitPay. According to Defendants, the First Amended Complaint touches on matters of public concern for three different reasons because (1) it involves economic and community well-being of both the Indian Patel Community and investors in Plaintiffs' ventures, (2) the speech relates to

- 14 -

investment services in ProfitPay as a good or service in the marketplace, and (3) the Plaintiffs are limited-purpose public figures.[3]

### 1. Allegations in the First Amended Complaint Relate to Economic and Community Well-Being

At the outset, the TPPA requires that the party seeking relief be the one exercising the protected right. *See Cartwright v. Thomason Hendrix, P.C.*, No. W2022-01627-SC-R11-CV, 2025 WL 3523045 at *7 (Tenn. Dec. 9, 2025). The First Amended Complaint challenges Defendants' communications with other investors and members of the Indian American Patel and LPS communities.

In declarations supporting their TPPA Petition, Defendants explained that the California Complaint was filed to address alleged fiduciary misconduct by ProfitPay's Board and to protect their financial interests. They confirmed that the actionable statements at issue were included in the complaint itself and were communicated in connection with the lawsuit to support a prima facie claim for breach of fiduciary duty. Jay Patel's own declaration contains sufficient allegations that the statements made by Defendants harmed his reputation in the Indian American Patel community and the hospitality industry. He cites, for example, investors questioning his integrity, circulating messages calling him "Bernie Madoff 2.0," and a publication, *The Company Dime*, repeating the allegations to a wider audience.

The trial court concluded that Defendants failed to demonstrate that these statements involved a matter of public concern, reasoning that the declarations did not sufficiently address alleged statements made prior to the California filing. Respectfully, we disagree.

In interpreting the statute, we apply the "natural and ordinary meaning" of its language as reflected on its face. *Bryant*, 33 S.W.3d at 765. To that end, we look to the usual and accepted meanings of the terms "economic" and "community," as informed by sources of common usage. *Id*. Merriam-Webster defines "economic" as "of, relating to, or based on the production, distribution, and consumption of goods and services." *Merriam-Webster.com Dictionary*, *Merriam-Webster*, https://www.merriam-webster.com/dictionary/economic (last visited, Mar. 29, 2026). "Community" is defined by Merriam-Webster to mean "a body of persons or nations having a common history or common social, economic, and political interests." *Merriam-Webster.com Dictionary*, *Merriam-Webster*, https://www.merriam-webster.com/dictionary/community (last visited, Mar. 29, 2026).

---

[3] For reasons addressed below, while either would be sufficient, we conclude that the Defendants are correct as to both first and second contention. We pretermit discussion of whether the Plaintiffs are limited purpose public figures.

Under the TPPA, a matter of public concern includes issues related to "economic or community well-being." Tenn. Code Ann. § 20-17-103(6)(B). This inclusion of "community" demonstrates the legislature's intention to expand the issue of "well-being." *Doe*, 638 S.W.3d at 620. Moreover, the phrase "related to" is understood in its ordinary sense to mean "connected in some way." *Castillo v. Rex*, 715 S.W.3d 321, 333 (Tenn. 2025) (quoting *Lacy v. Vanderbilt Univ. Med. Ctr.* No. M2016-02014-COA-R3-CV, 2017 WL 6273316, at * 6 (Tenn. Ct. App. May 4, 2017)).

ProfitPay is an online payment processing company operating in the marketplace. Jay Patel was directly involved in soliciting investors for the company. Investments in a company are economic in nature, as they involve allocating capital. Thus, communications concerning the management of those investments and the conduct of company leadership implicate economic well-being within the meaning of the TPPA.

This court has rejected the idea that "community well-being" means that an issue involves the "community as a whole." *See Doe*, 638 S.W.3d at 620. Here, the challenged statements were disseminated to the investors of ProfitPay, many of whom are members of the Indian American Patel and LPS communities. These individuals share a common economic interest in ProfitPay, and communications regarding alleged misconduct directly affect their well-being.

In applying the TPPA to the facts of this case, we conclude that the statements disseminated by Defendants to the Indian American Patel and LPS communities, as well as to other investors, constitute an exercise of free speech protected under the TPPA. Specifically, we find that the allegations contained in their message implicate a matter of public concern, contemplated by the TPPA as "economic or community well-being." *See* Tenn. Code Ann. § 20-17-103(6).

### 2. Statements Relate to Investment Services in the Marketplace

Defendants also argue that the controversy relates to a matter of public concern because the allegations in the First Amended Complaint involve investment services in the marketplace. They contend that the complaint centers on statements made to third parties on a broad, national scale that allegedly disparaged Plaintiffs and caused reputational harm in the marketplace, including within the hospitality industry and internationally, particularly in India.

Plaintiffs respond that the statements at issue do not involve matters of public concern. They argue that Defendants' accusations that Jay Patel operated a Ponzi scheme and that the other Plaintiffs engaged in self-dealing do not concern the services ProfitPay provided to investors. Because ProfitPay is an online payment processing company, Plaintiffs contend that allegations of a Ponzi scheme and self-dealing are unrelated to its business operations and therefore do not implicate a matter of public concern.

In *Goldberger v. Scott*, we held that a party's communication regarding a franchising agreement was "'made in connection with' 'an issue related to' any 'matter deemed by a court to involve a matter of public concern.'" 2024 WL 3339314 at *6 (quoting Tenn. Code Ann. §§ 20-17-104, -103(3), (6)). That case involved a franchise agreement gone awry, and the defendant communicated with the plaintiff's existing customers, including by posting on a business website. *Id*. The plaintiff argued that the communications concerned only existing private business relationships and were not matters of public concern. *Id*. at *5. Given the TPPA's broad language, as well as the legislature's directive to construe the statute's language broadly, we found that the defendant met his prima facie case that his communication fell within the statute's scope. *Id*. at *7. Based on the complaint, we found that the regulation of franchise and compliance with franchise regulations are matters of public concern. *Id*. at *6

Similarly, in *4U2ASKY Entertainment, Inc. v. Blessing Chibueze Offor*, this Court held that a communication asserting ownership of a musical work was sufficiently "related to" a matter of public concern to fall within the scope of the TPPA. No. M2023-00238-COA-R3-CV, 2025 WL 653529, at *12 (Tenn. Ct. App. Mar. 9, 2025). As we explained, when a statutory definition includes a specific term, the enumerated items are illustrative, not exclusive. *Id*. at *11 (quoting *State v. Marshall*, 319 S.W.3d 558, 561 (Tenn. 2010)). Looking at the plain language of the statute, it was apparent that "a communication asserting ownership of a musical work" was related to a musical work, as defined in the TPPA. *Id*.; *see* Tenn. Code Ann. § 20-17-103(6)(F). This Court also noted that Subpart (G) of the TPPA addresses any concern that the statute might be underinclusive. *4U2ASKY*, 2025 WL 653529, at *13.

These precedents confirm that the TPPA's definition of "matter of public concern" is broad and encompasses communications related to commercial activities. Under a plain reading of the TPPA, "a good, product, or service in the marketplace" would seem to include investments in a business. Statements about the way ProfitPay operates, including claims of misconduct, speak to the quality of its business. These statements reach the broader marketplace by alerting current and potential investors to possible risks and are not confined to private disagreements. Given this, the communications to current and potential investors about ProfitPay's business practices constitute "a good, product, or service in the marketplace" and are thus matters of public concern under the TPPA. *See* Tenn. Code Ann. § 20-17-103(6)(E).

## C. Effect On the Trial Court's Proceedings

Once a party petitioning for dismissal under the TPPA has made a prima facie case that the legal action against them is "based on, relates to, or is in response to that party's exercise of the right to free speech, right to petition, or right of association," then the court "shall dismiss the legal action unless the responding party establishes a prima facie case for each essential element of the claim for legal action." *Id.* § 20-17-105(a)(b). If the petitioning party thereafter "establishes a valid defense to the claims in the legal action,"

then the court "shall dismiss the legal action." *Id.* § 20-17-105(c). Therefore, if the petitioning party meets this initial threshold burden, it then shifts to the party filing the complaint to make a prima facie case for each element of its cause of action.

Here, the trial court denied Defendants' TPPA Petition, finding they had not engaged in protected activity under the TPPA. This court having now determined that Defendant's act of filing suit in California and spreading messages among investors and the Indian Patel and LPS communities constitutes both an exercise of their right to petition as well as their right of free speech pursuant to the TPPA, we conclude that Defendants have satisfied their initial burden of making a prima facie case that Plaintiffs legal action was "based on, related to, or is in response to" their right of free speech and right to petition. *See id.* § 20-17-105(a).

Thus, we reverse the trial court's order denying Defendants' TPPA Petition. Because Defendants have satisfied their initial burden under the TPPA, the statute's burden-shifting framework applies, and Plaintiffs must now establish a prima facie case for each essential element of their claims. Based on the foregoing, we remand this matter to the trial court for a determination of whether the Plaintiffs can meet that burden and, if so, whether Defendants' nonetheless have a valid defense.[4]

### IN CONCLUSION

We conclude that Defendants satisfied their prima facie burden by showing that Plaintiffs' claims are based on, relate to, or arise in response to their exercise of the rights to petition and of free speech. Defendants' decision to proceed with their TPPA Petition after the First Amended Complaint was filed did not render the petition moot. The trial court's denial of the TPPA Petition is reversed, and the case is remanded for further proceedings consistent with this opinion. Costs of this appeal are assessed against the appellees, for which execution may issue if necessary.

/s/ Andy D. Bennett
ANDY D. BENNETT, J.

---

[4] Because we have resolved this case on other grounds, we need not address the appellants' issues of whether Defendants met their burden under the TPPA; whether the trial court erred when it failed to consider and address the absolute litigation privilege; whether the trial court abused its discretion in not amending or altering its June 13, 2024 Order; whether the trial court abused its discretion in failing to consider revised declarations submitted by Defendants; or whether Defendants' TPPA Petition should have been granted and Defendants awarded their attorneys' fees and costs.